Nicole Phillis, SBN 291266
DAVIS WRIGHT TREMAINE LLP
865 S Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone:     (213) 633-8657
Email: NicolePhillis@dwt.com

John A. Goldmark, admitted *Pro Hac Vice*
Diane Butler, admitted *Pro Hac Vice*
Caesar Kalinowski IV, admitted *Pro Hac Vice*
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: 206-622-3150
Email: JohnGoldmark@dwt.com
        DianeButler@dwt.com
        CaesarKalinowski@dwt.com

Attorneys for Plaintiffs
Treez, Inc., and Ameya Pethe

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREEZ, INC., a California corporation; and AMEYA VINAYAK PETHE, a citizen of India,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, a department of the U.S. government;<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, an agency of the U.S. Department of Homeland Security;<br><br>UR M. JADDOU, in her Official Capacity as the Director of U.S. Citizenship and Immigration Services; and<br><br>KRISTINE R. CRANDALL, in her Official Capacity as the Acting Director of the California Service Center, U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security,<br><br>Defendants. | No. 3:22-cv-07027-RS<br><br>**PLAINTIFFS' NOTICE OF MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**<br><br>Assigned to:  Judge Richard Seeborg<br>              Mag. Judge Thomas Hixson<br><br>Date:   Thursday, October 24, 2024<br>Time:   1:30p.m.<br>Dept.   3<br><br>Action Filed:  November 9, 2022<br>Trial Date:    November 13, 2024 |

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA 90017
213.633.6800 main · 213.633.6899 fax

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Thursday, October 24, 2024, at 1:30p.m. or as soon thereafter as counsel may be heard in Department 3 of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Treez, Inc. and Ameya Vinayak Pethe (collectively "Plaintiffs") will and hereby do move this Court for summary judgment against Defendants United States Department of Homeland Security, United States Citizenship and Immigration Services ("USCIS"), Ur M. Jaddou, and Kristine R. Crandall (collectively "Defendants").  This Motion is based on the pleadings and papers filed here, including the attached memorandum, the Certified Administrative Record ("CAR"), and such other matters as may be presented to the Court.

**REQUESTED RELIEF**

Because Defendants violated the Administrative Procedures Act by exceeding their statutory authority, promulgating a new rule without the required procedure, and arbitrarily and capriciously denying Plaintiffs' amended H-1B petition, the Court should grant summary judgment for Plaintiffs, declare USCIS's new rule to be invalid, and order Defendants to approve Plaintiffs' amended H-1B petition.

DATED this 18th day of September, 2024.

DAVIS WRIGHT TREMAINE LLP
Attorneys for Plaintiffs, Treez, Inc., and
Ameya Pethe

By  s/  *John A. Goldmark*
John A. Goldmark, admitted *Pro Hac Vice*
Diane Butler, admitted *Pro Hac Vice*
Nicole Phillis, SBN 291266
Caesar Kalinowski, admitted *Pro Hac Vice*

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - i

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................ 1

II.    SUMMARY OF FACTS ...................................................................................... 1

    A.    Defendants Approve Plaintiffs' Original Petition and Approve Many Other Similar Petitions by Treez. ........................................................... 1

    B.    Defendants Depart from Past Precedent and Arbitrarily Deny Plaintiffs' Amended Petition by Applying a New "Illegality Rule." ................................. 2

    C.    Plaintiffs Challenge Defendants' New "Illegality Rule" and Arbitrary Denial of the Amended Petition. ............................................................ 4

    D.    The Forced Production of Defendants' Records Further Reveal Their Arbitrary Application of the New "Illegality Rule." ............................................ 4

III.    ARGUMENT ........................................................................................................ 7

    A.    Defendants Exceeded Their Statutory Authority by Evaluating Whether Plaintiffs' Business Violated the Controlled Substances Act........................... 8

    B.    Defendants Improperly Promulgated a New Legislative Rule Without the Required Notice and Comment Procedures. ...................................... 12

    C.    Defendants Arbitrarily and Capriciously Denied Plaintiffs' Amended Petition................................................................................................ 16

        1.    Defendants Arbitrarily Departed from Past Precedent and Other Similarly Situated Petitioners Without Adequate Explanation. ............. 16

        2.    Defendants Arbitrarily Applied an Incorrect Legal Standard for Aiding and Abetting. ............................................................ 20

        3.    Defendants Arbitrarily Ignored Facts Establishing That Plaintiffs Do Not Aid Nor Abet Violations of Federal Law. ............................... 23

IV.    CONCLUSION ................................................................................................. 25

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - ii

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

# TABLE OF CONTENTS

**Page**

**Cases**

*A.O. v. Cuccinelli,*
457 F. Supp. 3d 777 (N.D. Cal. 2020).................................................................................12

*Atchison, T. & S. F. Ry. Co. v. Wichita Bd. of Trade,*
412 U.S. 800 (1973) ...........................................................................................16, 18

*Azar v. Allina Health Servs.,*
587 U.S. 566 (2019) ............................................................................................14

*Baptist Med. Ctr. v. Burwell,*
2015 WL 13808477 (D.D.C. 2015)..............................................................................20

*Botosan v. Paul McNally Realty,*
216 F.3d 827 (9th Cir. 2000) .................................................................................8

*Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.,*
403 F.3d 771 (D.C. Cir. 2005)................................................................................17, 19

*Butte Cty., Cal. v. Hogen,*
613 F.3d 190 (D.C. Cir. 2010)................................................................................24

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
401 U.S. 402 (1971) .............................................................................................16

*City & Cnty. of San Francisco v. United States,*
130 F.3d 873 (9th Cir. 1997) .................................................................................7

*Colwell v. Dep't of Health and Hum. Servs.,*
558 F.3d 1112 (9th Cir. 2009) ...............................................................................12

*Ctr. for Biological Diversity v. Bureau of Land Mgmt.,*
422 F. Supp. 2d 1115 (N.D. Cal. 2006).......................................................................21

*Direct Sales Co. v. United States,*
319 U.S. 703 (1943) ............................................................................................21

*E. Bay Sanctuary Covenant v. Barr,*
964 F.3d 832 (9th Cir. 2020).................................................................................24

*E. Bay Sanctuary Covenant v. Biden,*
683 F. Supp. 3d 1025 (N.D. Cal. 2023)..............................................................7, 11, 12

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - iii

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

*FCC v. Fox Television Stations*,
    556 U.S. 502 (2009) ...........................................................................................16, 17

*Gen. Land Off. v. U.S. Dep't of the Interior*,
    947 F.3d 309 (5th Cir. 2020) ....................................................................................20

*Genuine Co. v. EPA*,
    890 F.3d 304 (D.C. Cir. 2018)..................................................................................24

*Hooper v. Nat'l Transp. Safety Bd.*,
    841 F.2d 1150 (D.C. Cir. 1988)................................................................................17

*Humane Soc'y of the U.S. v. Locke*,
    626 F.3d 1040 (9th Cir. 2010) ............................................................................17, 20

*Humane Soc'y of the U.S. v. Pritzker*,
    75 F. Supp. 3d 1 (D.D.C. 2014) ...............................................................................21

*In re Pangang Grp. Co., Ltd.*,
    901 F.3d 1046 (9th Cir. 2018) ..................................................................................11

*In re Way to Grow, Inc.*,
    597 B.R. 111 (Bankr. D. Colo. 2018), *aff'd*, 610 B.R. 338 (D. Colo. 2019) .......................22

*J.L. v. Cissna*,
    341 F. Supp. 3d 1048 (N.D. Cal. 2018)............................................................12, 16, 17, 20

*Koon v. United States*,
    518 U.S. 81 (1996) ...................................................................................................20

*Lewis-Mota v. Sec'y of Lab.*,
    469 F.2d 478 (2d Cir. 1972) .....................................................................................12

*Loper Bright Enters. v. Raimondo*,
    144 S. Ct. 2244 (2024) ...............................................................................................8

*Matter of Chawathe*,
    25 I. & N. Dec. 369 (2010).......................................................................................24

*Matter of I-Corp.*,
    2017 WL 1397675 (AAO Apr. 12, 2017) .................................................... *passim*

*Mendenhall v. Nat'l Transp. Safety Bd.*,
    92 F.3d 871 (9th Cir. 1996)......................................................................................21

*Moreno Galvez v. Cuccinelli*,
    387 F. Supp. 3d 1208 (W.D. Wash. 2019) ..........................................................12, 13

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

*Motor Vehicle Mfg. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) .................................................................................16, 24, 25

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
  545 U.S. 967 (2005) ........................................................................................17

*Nat'l Urb. League v. Ross*,
  489 F. Supp. 3d 939 (N.D. Cal. 2020).......................................................20, 25

*Ocasio v. United States*,
  578 U.S. 282 (2016) ........................................................................................21

*Organized Vill. of Kake v. Dep't of Agric.*,
  795 F.3d 956 (9th Cir. 2015) .............................................................17, 18, 19

*P.J.E.S. v. Wolf*,
  502 F. Supp. 3d 492 (D.D.C. 2020) .................................................................11

*Petroleum Commc'ns, Inc. v. FCC*,
  22 F.3d 1164 (D.C. Cir. 1994) .........................................................................17

*Ramos v. Nielsen*,
  321 F. Supp. 3d 1083 (N.D. Cal. 2018)...........................................................17

*RELX, Inc. v. Baran*,
  397 F. Supp. 3d 41 (D.D.C. 2019)...................................................................24

*Rosemond v. United States*,
  572 U.S. 65 (2014) ....................................................................................21, 22

*Rotkiske v. Klemm*,
  589 U.S. 8 (2019) ............................................................................................11

*St. Lawrence Seaway Pilots Ass'n, Inc. v. U.S. Coast Guard*,
  85 F. Supp. 3d 197 (D.D.C. 2015)...................................................................20

*Stellar IT Sols., Inc. v. U.S. Citizenship & Immigr. Servs.*,
  2018 WL 6047413 (D.D.C. 2018) ....................................................................25

*Texas v. United States*,
  86 F. Supp. 3d 591 (S.D. Tex. 2015), *aff'd*, 809 F.3d 134 (5th Cir. 2015) ..........................13

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023) ....................................................................................21, 23

*United States v. Raper*,
  676 F.2d 841 (D.C. Cir. 1982)..........................................................................21

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - v

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

*United States v. Superior Growers Supply, Inc.*,
   982 F.2d 173 (6th Cir. 1992) ........................................................................21

*United States v. Teffera*,
   985 F.2d 1082 (D.C. Cir. 1993)....................................................................21

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ......................................................................................11

**Statutes**

5 U.S.C.
   § 553 ...................................................................................................4, 12, 14
   § 706 ..........................................................................................................4, 8

8 U.S.C.
   § 1101 ............................................................................................................8
   § 1182 ......................................................................................................8, 15
   § 1184 ......................................................................................................8, 13

18 U.S.C.
   § 2 .........................................................................................................21, 22
   § 371 ............................................................................................................22

21 U.S.C.
   § 841 ............................................................................................................22
   § 846 .....................................................................................................21, 22

**Rules**

Fed. R. Civ. P. 56 .................................................................................................7

**Regulations**

8 C.F.R.
   § 214.2 ...................................................................................................10, 13

20 C.F.R.
   § 655.730 ...............................................................................................13, 14

**Other Authorities**

The Cannigma, *Where cannabis is legal in the United States*, https://cannigma.com/us-
   states-where-cannabis-is-legal/..................................................................15

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

This Court should set-aside and correct Defendants' unlawful actions.  Defendants arbitrarily and capriciously denied Plaintiff Treez's amended H-1B petition—which requested a location change for its software director—despite approving an ***identical*** petition months before and many others like it in prior years.  Defendants departed from past precedent based on a new "illegality" rule they unlawfully enacted, and a legally and factually incorrect assertion that Plaintiffs' work aided and abetted activities related to violations of federal drug laws by providing software services to state-legal cannabis businesses.  Defendants' about-face denial violated the Administrative Procedures Act ("APA") on multiple grounds:

***First***, Defendants exceeded their statutory authority by evaluating and determining whether business activities violate federal criminal laws—which is beyond the authority Congress delegated to Defendants and thus in violation of the APA.

***Second***, Defendants violated the APA by promulgating and applying a new substantive "illegality" rule without undertaking the required rule-making process.

***Third***, Defendants acted arbitrarily and capriciously in denying Plaintiffs' amended petition, departing from past precedent after approving the identical original petition, numerous other similar Treez petitions, and many other petitions for similarly situated petitioners.

Accordingly, the Court should grant summary judgment for Plaintiffs, vacate Defendants' ultra vires and improper "illegality" rule, and order Defendants to approve the amended petition.

## II.      SUMMARY OF FACTS

### A.      Defendants Approve Plaintiffs' Original Petition and Approve Many Other Similar Petitions by Treez.

Plaintiff Treez, Inc. is an enterprise cloud commerce platform that provides Software as a Service ("SaaS") solutions built on top of Amazon Web Services for use by its customers, which include state-legal cannabis brands and retailers.  ECF Nos. 1 ¶ 8; 37-8 at 25.[1]  On December 22, 2021, Treez petitioned USCIS for H-1B status for plaintiff Ameya Pethe, a highly skilled and

---

[1] This brief's pin record citations refer to the BATES stamp in the administrative record.

educated software developer from India, to work as Treez's Director of Development Operations while residing in the state of Missouri.  *See* ECF No. 37-8 at 25-27 (the "Original Petition").  As part of its application, Treez noted that it required a Director of Development Operations to architect, build, and manage the software systems it then licenses to customers.  *Id.* at 25.  Treez identified that Mr. Pethe would provide software developer services, none of which make any reference or connection to cannabis.  *Id.* at 26.  On January 4, 2022, Defendant USCIS approved Treez's petition for Mr. Pethe's H-1B status to work as a software developer through January 12, 2025.  ECF No. 34-1 at 46.

This was not the first H-1B application filed by Treez and approved by Defendants.  In fact, Defendants had previously approved numerous petitions for other Treez nonimmigrant workers who would fill specialty occupations at the technology company.  Defendants had approved Treez's H-1B petitions for a Development Operations Engineer in 2016 (ECF No. 37-1), a Quality Assurance Automation Engineer in 2017 (ECF No. 37-3), a Software Engineer in 2019 (ECF No. 37-6), and a Software Engineer in 2021 (ECF No. 37-7).  Just like the Original Petition, these other Treez H-1B petitions all identified the nature of Treez's business and connection to state-legal cannabis retailers.  *See, e.g.*, ECF No. 37-3 at 44-56.  And just like the Original Petition, Defendants approved Treez's other petitions without any additional requirements beyond those included in the regulations.  Defendants did not invoke any purported "illegality rule," or provide any indication they would take the position that Treez's business was violating federal criminal law—much less that Defendants would anoint themselves the interpreters and arbiters of federal criminal drug laws.

### B.   Defendants Depart from Past Precedent and Arbitrarily Deny Plaintiffs' Amended Petition by Applying a New "Illegality Rule."

A few months after Defendants approved the Original Petition, Plaintiffs filed an amended petition—solely to change Mr. Pethe's employment location from Missouri to Pennsylvania.  ECF No. 34-1 at 13-84 (the "Amended Petition").  Beyond the location change, the Amended Petition is identical to the Original Petition, including by identifying the exact same business model and beneficiary duties.  *See id.* at 37-38.  Instead of approving the

Amended Petition, as they did with the identical Original Petition (and many others like them, as discussed below), Defendants reversed course.  Defendants sent a Request for Evidence ("RFE") invoking an "Illegality Rule" and demanding that Treez prove Mr. Pethe's work as a software engineer would not aid and abet "activities that violate the [Controlled Substance Act ("CSA")]." ECF No. 34-1 at 98-104.  In response, Treez confirmed that Mr. Pethe's job was solely as a software engineer, and "[n]o aspect of [his] employment (or that of any Treez employee) includes the cultivation, processing possession, distribution or delivery of cannabis," *id.* at 120-25, and detailed how Treez's providing software to state-legal cannabis businesses does not constitute aiding and abetting as a factual or legal matter, *id.* at 149-56.  Despite that evidence, and overwhelming legal support, Defendants reversed their prior practice with Treez and denied the Amended Petition on October 6, 2022.  *Id.* at 1-6 (the "Denial Order").

In their Denial Order, Defendants admit that "USCIS will generally defer to its prior determination," but said it would not do so if there was a "material error," "material change," or "new material information."  *Id.* at 2.  Defendants did not, however, identify any material error, material change, or new material information related to the prior petition.  Instead, without identifying any applicable basis, Defendants stated they would not defer to their approval of the identical Original Petition because "questions arose regarding the legality of the services to be provided by [Mr. Pethe]."  *Id.*  Defendants claimed they must "must … take into account … intersecting areas of law, such as … criminal" laws and "cannot approve a petition based on employment that violates a federal or state law."  *Id.*  Defendants cited no support for their claimed authority to assess businesses for compliance with federal criminal laws, nor for their claimed authority to interpret the reach of federal drug laws, much less the boundaries of "aiding and abetting" criminal liability.  Despite that lack of authority, Defendants declared that Plaintiffs must "establish[] that the beneficiary's proposed employment … does not aid and abet activities that violate the CSA."  *Id.* at 3.  In other words, Defendants claimed Plaintiffs must prove a negative:  that their business does not aid and abet violations of the CSA.

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 3

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

Defendants conceded that it "is technically true" that Treez "is not in the business of providing controlled substances but is rather a software company that has marijuana dispensaries as customers." *Id.* at 4-5. Nonetheless, Defendants denied the Amended Petition, claiming "the services to be provided by [Mr. Pethe] will ***aid or abet activities related to*** the manufacture, cultivation, distribution, or possession of marijuana," and thus purportedly constitute illegal employment. *Id.* (emphasis added). Defendants claimed authority to determine what businesses "aid and abet activities related to" the state-legal cannabis industry, *id.*, which in turn, they said gave authority to determine illegal employment.

### C. Plaintiffs Challenge Defendants' New "Illegality Rule" and Arbitrary Denial of the Amended Petition.

On November 9, 2022, Plaintiffs filed suit for declaratory and injunctive relief under the APA because Defendants violated the APA by denying the Amended Petition, which was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." Compl. ¶¶ 38-47 (quoting 5 U.S.C. § 706(2)(A), (C)). Defendants "[f]ailed to explain or articulate the reasons for departing from past precedent," *id.* ¶ 45.b, applied a new erroneous legal standard for H-1B visas, *id.* ¶¶ 45.a, 45.c, 46, and failed to follow the APA's notice-and-comment procedures by enacting a new rule that substantially departed from past practices, *id.* ¶¶ 49-55 (citing 5 U.S.C. § 553). Defendants have since spent years refusing to provide a complete record of their internal deliberative material and files from similarly situated petitioners. Their refusals have resulted in multiple court orders compelling production of a complete CAR. ECF Nos. 46 & 29. On March 21, 2024, Plaintiffs moved to enforce those orders and for sanctions, ECF No. 60, which remains pending, *see* ECF No. 88.

### D. The Forced Production of Defendants' Records Further Reveal Their Arbitrary Application of the New "Illegality Rule."

The reason for Defendants' refusal to turn over the required CAR documents became apparent once the Court forced them to supplement the record. The Court-ordered supplements

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 4

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA 90017
213.633.6800 main · 213.633.6899 fax

revealed that Defendants had approved a multitude of similar petitions for years despite notice that those petitioners were providing services to state-legal cannabis clients, just like Treez.

For example, Defendants approved an H-1B for Baker Technologies, Inc.—a company that "creates and operates a customer relationship management (CRM) platform which is specifically tailored to the legal cannabis industry"—to employ a Database Program Manager to oversee its software.  ECF No. 86-3 at 17.  Likewise, Defendants approved an H-1B for Flourish Software, Inc.'s Solutions Engineer—a SaaS provider whose "software platform goes way beyond tracking product from seed to sale" and also "enable[s] automation at each link in the cannabis supply chain."  ECF No. 86-14 at 16.  *See also, e.g.*, ECF Nos. 86-18 (Network Engineer for SaaS provider, 2020); 86-19 (Siebel Consultant for SaaS provider, 2017); 86-21 (Food Analyst for testing lab, 2021).  Defendants even approved an H-1B for a "Management Analyst" to directly conduct studies and improve operations at the ***petitioner's own recreational cannabis dispensaries***.  *See* ECF No. 86-15.  Defendants also evaluated numerous other petitioners who openly provided services to state-legal cannabis clients—without ever raising the potential "illegality" of their operations.  *See, e.g.*, ECF Nos. 86-1 (Business Analyst for state medical marijuana program, 2019); 86-22 (Software Developer for SaaS provider, 2018); 86-24 (Software Developer for SaaS provider, 2019); 86-25 (Software Developer for SaaS provider, 2019); 86-26 (same); 86-27 (same); 86-28 (same); 86-29 (same); 86-30 (same); 86-31 (same).

Defendants' forced CAR supplements also revealed that their Illegality Rule stemmed from a 2017 decision, *Matter of I-Corp.*, Adopted Decision 2017-02, 2017 WL 1397675, at *2 (AAO Apr. 12, 2017), which asserted—without any authority—that "[t]o determine eligibility for many immigration benefits, USCIS officers must also take into account other, intersecting areas of law, such as criminal, family, and (as relevant here) labor."  This requirement to evaluate all other potential areas of laws was adopted formally in 2017, *see* ECF No. 75-1 at 468, and later applied in the cannabis context beginning in 2019, *see* ECF No. 75-1 at 246-47.  Defendants engaged in no rule-making procedures to adopt this new Illegality Rule.  Instead, as

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 5

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

revealed by their internal deliberations over Plaintiffs' Amended Petition, they began invoking and applying it to visa petitions in a haphazard, irregular, and inconsistent manner.

In July 2022, USCIS officer John Batiste reviewed the Amended Petition and spoke with his supervisor Jenny Chong, who stated that she "d[idn't] see any issues" because Treez "is not directly involved in producing/distributing of [cannabis]" ECF No. 75-1 at 75. Following his discussion with his supervisor and the Office of Chief Counsel ("OCC"), Batiste recommended the Amended Petition for approval. He declared the "case should be okay to approve" because the Treez "is not growing, or harvesting, or selling marijuana" and was simply "providing software solutions." *Id.* at 77-78. That same day, however, Section Chief David Jung sought to change course. Despite admitting "[w]e don't see that the bene[ficiary] himself is directly involved in sales or distribution of cannabis," Jung directed Batiste to prepare a RFE and check with OCC. *Id.* at 102. OCC reviewed the materials and confirmed to Jung that "unless there is [a] material change in the petition, the amendment should also be approved." *Id.*

Despite Batiste recommending approval and that "OCC says [USCIS] should approve [the Amended Petition]," the agency did not proceed with those recommendations. Instead, at Jung's directions, USCIS sent out the RFE, shifting positions and requiring Treez to prove it was not "aiding and abetting" violations of the CSA. *Id.* at 104. After evaluating Plaintiffs' RFE response in September 2022, Batiste informed Jung that, after "looking at the totality of [the] record, [his] opinion is that an approval of the amendment is the way to go." *Id.* at 221. But Jung remained determined to deny. He directed Batiste to analyze the petition "as if this is the first case" and to "provide analysis as to why the previous approval was not in error." *Id.* at 225. In other words, Jung directed Batiste to find a way to reach a different result this time. Based on his Section Chief having twice refused his recommendation to approve, Batiste then reversed his position to match his boss's desires. Distinguishing Treez from other SaaS providers like "Microsoft, Intel, IBM, and Oracle," Batiste asserted that Treez was "focused" on the "marijuana industry" and the petition "should be denied for illegal work." *Id.* at 237-38. Batiste took this position despite affirming that the "federal mandate" does not "make[] a distinction between

lawful activities and unlawful activities," and Mr. Pethe "is not involved in the hands-on manufacture, importation, possession, use, or distribution." *Id.* at 238; *see also id.* at 248 ("In response to my RFE, the petitioner met the burden regarding amended status.  Pertaining to the legality of the work, however, I do not think the burden has been met.").

Given this new recommendation, reached at Jung's direction, Defendants denied the Amended Petition.  Jung was unperturbed about the impact of the agency's flip-flopped result, and confessed:  "[D]on't worry if we are wrong.  This is a learning process and we could end up changing our opinion on this case[.]"  *Id.* at 253.  A month later, Batiste told Jung in a private chat that he "think[s] about the Treez case" and hopes he "didn't bring any hardships to any other officers involved."  *Id.* at 599.  Jung responded by confiding, "the decision could change" because "mistakes can happen" and "it could be that we made a mistake, who knows."  *Id*.

Treez brings this suit to remedy Defendants' improper and ultra vires "illegality rule" and their arbitrary and capricious application of that rule to deny Plaintiffs' Amended Petition.

### III.     ARGUMENT

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "For cases involving review of agency action under the APA, '[t]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'"  *E. Bay Sanctuary Covenant v. Biden*, 683 F. Supp. 3d 1025, 1034 (N.D. Cal. 2023) (quoting *City & Cnty. of San Francisco v. United States*, 130 F.3d 873, 877 (9th Cir. 1997)).

As detailed below, the Court should grant summary judgment for Plaintiffs because Defendants (A) exceeded the scope of their statutory authority and federal law, (B) promulgated and enforced a new "illegal employment" rule without the required notice and comment procedures, and (C) acted arbitrarily and capriciously in denying Plaintiffs' amended H-1B petition, after previously approving the materially-identical original petition, numerous other similar Treez petitions, and many other petitions for similarly situated petitioners.

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 7

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

### A.   Defendants Exceeded Their Statutory Authority by Evaluating Whether Plaintiffs' Business Violated the Controlled Substances Act.

The APA provides that a court must "hold unlawful and set aside" any agency action that exceeds the statutory authority under which it was promulgated.  5 U.S.C. § 706(2)(C).  To determine whether the challenged agency action is consistent with Congress's directive, courts no longer employ the familiar *Chevron* framework.  Instead, courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires."  *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).  "Statutory interpretation begins with the plain meaning of the statute's language, [and] [w]here the statutory language is clear and consistent with the statutory scheme at issue, the plain language of the statute is conclusive and the judicial inquiry is at an end."  *Botosan v. Paul McNally Realty*, 216 F.3d 827, 831 (9th Cir. 2000) (citations omitted).  Here, Defendants acted wholly outside their statutorily delegated authority by applying and analyzing a petitioner or beneficiary's potential violation of the CSA as part of the H-1B visa process.

Under the Immigration and Naturalization Act ("INA"), Defendants DHS and its agency USCIS are authorized to admit nonimmigrants to be engaged in a specialty occupation.  Relevant here, the INA identifies and defines an "H-1B" nonimmigrant foreign worker as one "coming temporarily to the United States to perform services … in a specialty occupation described in section 1184(i)(1) …who meets the requirements for the occupation specified in section 1184(i)(2) …, and with respect to whom the Secretary of Labor determines and certifies to the Attorney General that the intending employer has filed with the Secretary an application under section 1182(n)(1)."  8 U.S.C. § 1101(a)(15)(H)(i)(b).  Section 1184 then defines the contours of "specialty occupation[s]" without any reference to the nature of the employment.  § 1184(i)(1)–(2).  Under Section 1182(n)(1), H-1B petitions require filing a separate application with the Secretary of Labor, which must include the employer's certifications regarding the wages offered in the employment, labor bargaining or strike conditions, details about the foreign workers sought and U.S. workers displaced, and control over the worker.

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 8

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

No portion of the INA related to H-1B requires any form of verification, attestation, or proof that the petitioner's business or beneficiary's role be evaluated for compliance with federal and state laws.  *See* ECF No. 75-1 at 238 (USCIS officer affirming that that the "federal mandate" does not "make[] a distinction between lawful activities and unlawful activities").  Nor does any provision state that applications must demonstrate that the petitioner's business does not "aid and abet activities that violate the CSA"—the requirement Defendants imposed and wrongfully decided here.  *See* ECF No. 34-1 at 4 ("Following a review of the evidence of record, it appears that the services to be provided by the beneficiary will aid or abet activities related to the manufacture, cultivation, distribution, or possession of marijuana.").  Instead, the INA simply mandates that the employer must prove that the beneficiary has the relevant expertise to fill a role that meets the standards for a "specialty occupation," and file attestations affirming that it comports with wage laws and confirming the working conditions.

Despite that lack of statutory authority or delegation, Defendants based their denial of Plaintiffs' Amended Petition on the following proposition:  "To determine eligibility for many immigration benefits, USCIS must also take into account other, intersecting areas of law, such as licensure, family, employment, and *(as relevant here) criminal*.  USCIS cannot approve a petition based on employment that violates a federal or state law."  *See* ECF No. 34-1 at 2 (emphasis added).  Defendants took this language from their "illegal or invalid employment" template, *see* ECF No. 34-2 at 406, which also contains no citation or support for Defendants' purported authority to evaluate whether the petitioner's business aids or abets activities in violation of federal criminal laws.  Defendants elsewhere cite *Matter of I-Corp.* as establishing this proposition.  *See, e.g.*, ECF Nos. 75-1 at 468 (2017 policy letter adopting standard), 246-47 (2019 policy email adopting standard with regard to cannabis), 248 (relying on decision in this case); 34-2 at 384 (internal marijuana round table presentation); 34-2 at 402 (internal document regarding "Cannabis/Marijuana/CBD Case Scenarios in the context of employment-based visa petitions").  But *Matter of I-Corp.* does not provide Defendants with authority to evaluate and determine compliance with federal criminal law.

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 9

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

In *Matter of I-Corp.*, a petitioner appealed the denial of a L-1B visa on the basis that "the evidence did not demonstrate that the Beneficiary possesses specialized knowledge or that he has been and will be employed in a capacity requiring specialized knowledge." 2017 WL 1397675, at *1. Upon *de novo* review, however, Defendants' Administrative Appeals Office ("AAO") found it was "unable to approve an employment-based visa petition where the record indicates that a petitioner will not pay its beneficiary the minimum wage required by applicable labor law," the Fair Labor Standards Act ("FLSA"). *Id.* at *2.[2] The AAO provided no citation for its claim that "USCIS officers must also take into account other, intersecting areas of law, such as criminal, family, and (as relevant here) labor," and admitted that "wage laws are not expressly restated in the [INA]." *Id.* at *3. Nonetheless, the AAO claimed "it is *implied* that authorized employment must comply with both the [INA] and the FLSA." *Id.* (emphasis added). The AAO emphasized that the FLSA specifically applies to employers, setting certain minimum wage thresholds, which supported their implied authority to ensure any employment-based visa petition complies with that wage threshold. *Id.* at *2-3. Later, relying on a catchall provision for L-1B petitions that allows evaluation of "such other evidence as the director, in his or her discretion, may deem necessary," 8 C.F.R. § 214.2(l)(3)(viii), the AAO remanded for the Director of the California Service Center to consider whether the proposed payment would comply with the FLSA. 2017 WL 1397675, at *3.

As admitted by the AAO, nothing in the INA requires (or even allows) USCIS to examine whether the wages provided by petitioner in *Matter of I-Corp.* complied with the FLSA. And even giving deference (though such deference is no longer due) to the agency's claimed authority to evaluate wages based on the catch all provision for L-1B petitions or to prove to the petitioner's "financial ability to remunerate the beneficiary," § 214.2(l)(3)(vi)(C), that authority would *only* extend to minimum wage compliance under the FLSA. No portion of the INA— much less the section mandating the requirements for a H-1B visa—authorizes the agency to

---

[2] Because the AAO addressed the issue *de novo* after the parties had briefed a separate basis, it is unclear whether there was ever any opportunity for the petitioner to challenge the purported statutory or regulatory basis for the holding or application of the Illegality Rule.

evaluate the petitioner's business and whether it may "aid or abet activities related to" violations of the CSA, as the agency improperly did here.  *See* ECF No. 34-1 at 4.  Further, the agency's claimed "implied" authority to ensure compliance rested on the FLSA's specific minimum wage mandate for employers, which necessarily applied to any employment-based petition.  *Matter of I-Corp.*, 2017 WL 1397675, at *2-3.  But no aspect of the CSA specifically targets employers for compliance, such that the agency's (albeit incorrect) rationale for "implying" their authority to ensure compliance with that federal criminal law would apply here.

While Congress ***could*** vest USCIS with authority to evaluate businesses for any connection to federally illegal industries to process their applications under the INA, ***it has not done so***.  Because "Congress … does not … hide elephants in mouseholes," *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001), and "[i]t is a fundamental principle of statutory interpretation that absent provision[s] cannot be supplied by the courts," *P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 514 (D.D.C. 2020) (quoting *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019)), the *Matter of I-Corp.* decision resting on the "implied" authority of Defendants to consider every other law in the United States was improperly decided.[3]

"The first and most important canon of statutory construction is the presumption 'that a legislature says in a statute what it means and means in a statute what it says there.'"  *E. Bay Sanctuary*, 683 F. Supp. 3d at 1040 (quoting *In re Pangang Grp. Co., Ltd.*, 901 F.3d 1046, 1056 (9th Cir. 2018)).  Congress specified the requirements and considerations for H-1B visas, and those do ***not*** include evaluating the nature of petitioner's business or whether it provides services to an industry deemed illegal under federal law.  Defendants invented that "illegality" evaluation.

---

[3] If *Matter of I-Corp.*'s larger holding was correct, USCIS would be an elephant of heretofore-unforeseen proportions, granting Defendants the apparent authority to evaluate any and all federal or state laws for whether they may apply to a petitioner's business, and then to make a substantive determination as to whether those laws have been violated.  Such claimed authority is most dangerous here, with USCIS determining that a business providing services to the state-legal cannabis industry is "aiding and abetting" violations of federal criminal law, casting a pall on the business and exposing it to apparent criminal liability and consequences.  No other agency in the United States has such a broad mandate, and it would be inconceivable that Congress intended to deliver that authority through hidden implication.

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 11

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

Accordingly, the Court should grant summary judgment and hold that Defendants acted in excess of their authority and not in accordance with the law.  *See, e.g.*, *E. Bay Sanctuary*, 683 F. Supp. 3d at 1043; *see also A.O. v. Cuccinelli*, 457 F. Supp. 3d 777, 792 (N.D. Cal. 2020) ("USCIS's decision to impose the reunification authority requirement is inconsistent with the plain text of the SIJ statute"); *Moreno Galvez v. Cuccinelli*, 387 F. Supp. 3d 1208, 1216 (W.D. Wash. 2019) (USCIS's "imposition of the 'reunification' requirement is inconsistent with the SIJ statute's plain language, exceeded the agency's authority, and is unreasonable.").

### B.   Defendants Improperly Promulgated a New Legislative Rule Without the Required Notice and Comment Procedures.

Even if Congress had delegated Defendants the authority to determine what business activities violate the CSA (it did not), Defendants separately violated the APA by establishing and applying a new substantive rule without the required procedures.  "The APA requires a federal agency to follow prescribed notice and comment procedures before promulgating substantive rules," *J.L. v. Cissna*, 341 F. Supp. 3d 1048, 1064 (N.D. Cal. 2018) (citing 5 U.S.C. § 553), which does not apply to "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice," *id.* (quoting § 553(b)(A)).  "The critical factor to determine whether a directive announcing a new policy constitutes a rule or a general statement of policy is 'the extent to which the challenged [directive] leaves the agency, or its implementing official free to exercise discretion to follow, or not to follow, the [announced] policy in an individual case[.]'"  *Id.* at 1064–65 (quoting *Colwell v. Dep't of Health and Hum. Servs.*, 558 F.3d 1112, 1124 (9th Cir. 2009)).  If "the directive 'narrowly limits administrative discretion' or establishes a 'binding norm' that 'so fills out the statutory scheme that upon application one need only determine whether a given case is within the rule's criterion,' it effectively replaces agency discretion with a new 'binding rule of substantial law.'"  *Id.* (citation omitted).

In this immigration context, courts have long held that substantive rules are those that necessarily affect the visa requirements for aliens by increasing the burden on employers and employees to submit proof that they meet implied criteria.  *See, e.g.*, *Lewis-Mota v. Sec'y of Lab.*, 469 F.2d 478, 481–82 (2d Cir. 1972) (holding APA required notice and comment

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 12

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

procedures because agency action "changed existing rights and obligations by requiring aliens of the class of appellants to submit proof of specific job offers as well as a statement of their qualifications" and "thereby made it more difficult for employers to fill vacancies"); *Texas v. United States*, 86 F. Supp. 3d 591, 671 (S.D. Tex. 2015) (notice and comment required because "DHS has adopted a new rule that substantially changes both the status and employability of millions" and the "changes go beyond mere enforcement or even non-enforcement of this nation's immigration scheme"), *aff'd*, 809 F.3d 134 (5th Cir. 2015); *Moreno Galvez*, 387 F. Supp. 3d at 1217 (notice and comment required because "the new policy creates a binding norm and compels agency adjudicators to withhold consent to SIJ status").

The INA delegates approval of H-1B applications to "the Attorney General, after consultation with appropriate agencies of the Government, upon petition of the importing employer." § 1184(c)(1).  Pursuant to this authority, Defendants enacted regulations for employment authorization under H-1B status, listed at 8 C.F.R. § 214.2(h)(4) (the "Regulation"). The Regulation defines a H-1B classification consistent with Congress's mandate, as "an alien who is coming temporarily to the United States …[t]o perform services in a specialty occupation … described in [§ 1184(i)(1)], that meets the requirements of [§ 1184(i)(2)], and for whom the Secretary of Labor has determined and certified to the Attorney General that the prospective employer has filed a labor condition application under [§ 1182(n)(1)]." § 214.2(h)(1)(ii)(B)(1). The Regulation then sets forth specific criteria and rules for H-1B status and petitions, including **(a)** standards for a specialty occupation, §§ 214.2(h)(4)(i)(A)(1), (h)(4)(iii)(A)-(D), **(b)** proof from an employer that it filed a labor condition application, § 214.2(h)(4)(i)(B), and **(c)** evidence of educational or expertise qualifications, § 214.2(h)(4)(iv)(A)-(B).  20 CFR § 655.730 details the labor condition application requirements, which mirror the statutory requirements for information on wages and conditions of employment.  *See* § 655.730(c)-(d).  Neither the Regulation, nor any of its rules, reference the nature of the employer's industry or evaluating compliance with criminal laws as any applicable criteria.

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 13

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

Here, Defendants call their Illegality Rule a "policy."  But this self-serving label means nothing.  "Agencies have never been able to avoid notice and comment simply by mislabeling their substantive pronouncements.  On the contrary, courts have long looked to the contents of the agency's action, not the agency's self-serving label, when deciding whether statutory notice-and-comment demands apply."  *Azar v. Allina Health Servs.*, 587 U.S. 566, 575 (2019).

The Illegality Rule is not a narrowly prescribed "general statement[] of policy" that USCIS officers are free to apply or not apply.  *See* § 553(b)(A).  Rather, it is a rule because it adds new substantive requirements that petitioners *must* satisfy and USCIS officers *must* apply. In its initial 2017 "policy" memo adopting the rule from *Matter of I-Corp.*, USCIS mandated that officers "***cannot*** approve a visa petition that is based on an illegal or otherwise invalid employment agreement," and "***must*** ensure that a beneficiary will not be paid a wage that is less than the minimum required wage under state or Federal law … before approving an employment-based visa petition."  ECF No. 75-1 at 468 (emphasis added).  Then, extending this Illegality Rule in 2019 to cannabis-related petitions, Defendants relied on *Matter of I-Corp.* to establish that "the petitioner bears the burden of establishing that the employment described in their petition will be lawful," before admonishing that officers should enforce that burden "where it appears the employment activity may violate federal law."  ECF No. 75-1 at 246-47; *see also* ECF No. 34-2 at 402 ("**Binding on all USCIS officers**:  An employment-based visa petition that is based on an illegal or otherwise invalid employment offer cannot be approved.") (citing *Matter of I-Corp.*).  Because the Illegality Rule is not interpreting some other existing requirement in the Regulation, and leaves no discretion for officers to relieve petitioners of its burden and requirements, it constitutes a substantive rule.

Defendants' application of their Illegality Rule confirms they treat it as a substantive rule and requirement, not a general discretionary "policy."  In denying the Amended Petition, Defendants declared that "[t]o determine eligibility" for immigration benefits, USCIS "must" consider other laws, "(as relevant here) criminal" laws, and "***cannot*** approve a petition based on employment that violates a federal or state law."  ECF No. 34-1 at 2 (emphasis added).  They

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 14

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

further declared that, to obtain approval, Plaintiffs must "establish[] that the beneficiary's proposed employment is not in violation of the CSA or does not aid and abet activities that violate the CSA." *Id.* at 3. This is a substantive requirement Defendants impose—i.e., a rule— and not some discretionary policy that need not be followed.

Accordingly, Defendants enacted a mandatory rule in 2017 that (1) prohibited approving employment petitions if the employment might violate state or federal law, and (2) placed the burden on petitioners to "establish" that their employment did not violate state or federal law. They extended that rule in 2019 to specifically require petitioners to establish that their business does not "aid and abet activities related to" violations of the CSA, and then applied that new rule to deny Plaintiffs' Amended Petition.

The impact of the Illegality Rule also shows it constitutes a substantive rule requiring notice and comment procedures. Defendants' new rule alters the status, obligations, and employability of innumerable workers, and thereby affects the operations of all service providers that happen to have customers involved in state-legal cannabis industries.[4] Indeed, the rule constitutes a sea change for H-1B petitions. This is particularly true for the countless employers who provide services to state-legal cannabis businesses—across the 41 states where cannabis is legal in some form—who are licensed, registered, and operating under state-law and serving their customers.[5] The Department of Justice, the agency charged with enforcing federal criminal laws, does not take action against these state-legal and regulated businesses, much less against those who provide them essential services. Yet Defendants decided to enact a rule under which USCIS vests itself with the authority to determine what employers "aid and abet" state-legal cannabis businesses, and deny them benefits as a consequence. That is an alarming new rule,

---

[4] Defendants' application of the Illegality Rule also has dire and prejudicial secondary effects, which implicate due process rights, because Defendants' uninformed determination that a foreign national has violated federal drug law—like here—also leads to their inadmissibility to ever return to the United States. *See* 8 U.S.C. § 1182(a)(2)(C)(i).

[5] *See, e.g.*, The Cannigma, *Where cannabis is legal in the United States*, https://cannigma.com/us-states-where-cannabis-is-legal/ (detailing the 41 states, plus District of Columbia and Puerto Rico, where cannabis is legalized in some form).

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 15

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

1   and one that requires notice and comment from the public, the state-legal businesses and industry

2   denigrated by it, and all their service providers against whom it discriminates.

3       The Court should grant summary judgment on Plaintiffs' rulemaking claim because

4   Defendants implemented the Illegality Rule without the APA's required notice-and-comment.

5   **C.   Defendants Arbitrarily and Capriciously Denied Plaintiffs' Amended Petition.**

6       The APA's "arbitrary and capricious" review requires courts to "engage in a substantial

7   inquiry[,] . . . a thorough, probing, in-depth review." *Citizens to Preserve Overton Park, Inc. v.*

8   *Volpe*, 401 U.S. 402, 415–16 (1971).  A thorough, probing, in-depth review of the record here

9   reveals that Defendants violated the APA by arbitrarily denying the Amended Petition.  In

10  addition to exceeding their authority and creating a new rule without the required process,

11  Defendants also arbitrarily and capriciously denied Plaintiffs' Amended Petition by:

12  (1) departing from past precedent and treating Treez disparately without any explanation,

13  (2) applying a new, erroneous legal standard for "aiding and abetting" that disregards well-

14  established law, and (3) failing to properly consider and weigh Plaintiffs' factual evidence

15  showing that they do not "aid and abet" violations of the CSA.

16  **1.   Defendants Arbitrarily Departed from Past Precedent and Other
        Similarly Situated Petitioners Without Adequate Explanation.**

17

18      Defendants arbitrarily denied the Amended Petition by departing from past precedent and

19  treating Plaintiffs differently than multitudes of similarly situated petitioners—without any

20  adequate explanation.  "Under the APA, an agency must 'examine the relevant data and

21  articulate a satisfactory explanation for its action.'" *Cissna*, 341 F. Supp. 3d at 1062 (quoting

22  *Motor Vehicle Mfg. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43

23  (1983)).  This "reasoned explanation" requirement is particularly acute when an agency changes

24  positions, as USCIS did here.  *See id.* (quoting *FCC v. Fox Television Stations*, 556 U.S. 502,

25  515 (2009)).  "Whatever the ground for the departure from prior norms, however, it must be

26  clearly set forth so that the reviewing court may understand the basis of the agency's action and

27  so may judge the consistency of that action with the agency's mandate." *Atchison, T. & S. F. Ry.*

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 16

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

*Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 808 (1973).  The requirement applies equally whether

the agency "adopts or displaces" a "formal" or "implied" rule or policy.  *Cissna*, 341 F. Supp. 3d

at 1062 (citing *Humane Soc'y of the U.S. v. Locke*, 626 F.3d 1040, 1050 n.4 (9th Cir. 2010);

*Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1108–09 (N.D. Cal. 2018)).

      "An agency may not, for example, depart from a prior policy *sub silentio*."  *Fox*

*Television*, 556 U.S. at 515.  Rather, the APA requires that the agency:

> (1) displays 'awareness that it is changing position,' (2) shows that 'the new policy is
> permissible under the statute,' (3) 'believes' the new policy is better, and (4) provides
> 'good reasons' for the new policy, which, if the 'new policy rests upon factual findings
> that contradict those which underlay its prior policy,' must include 'a reasoned
> explanation ... for disregarding facts and circumstances that underlay or were engendered
> by the prior policy.'

*Organized Vill. of Kake v. Dep't of Agric.*, 795 F.3d 956, 966 (9th Cir. 2015) (quoting *Fox*

*Television*, 556 U.S. at 515–16).  Likewise, "[a]n agency must provide an adequate explanation

to justify treating similarly situated parties differently."  *Burlington N. & Santa Fe Ry. Co. v.*

*Surface Transp. Bd.*, 403 F.3d 771, 776 (D.C. Cir. 2005) (collecting cases); *see also Petroleum*

*Commc'ns, Inc. v. FCC*, 22 F.3d 1164, 1172 (D.C. Cir. 1994) ("an agency must provide adequate

explanation before it treats similarly situated parties differently" and "must justify its failure to

take account of circumstances that appear to warrant different treatment for different parties").

"Where an agency applies different standards to similarly situated entities and fails to support

this disparate treatment with a reasoned explanation and substantial evidence in the record, its

action is arbitrary and capricious and cannot be upheld."  *Burlington*, 403 F.3d at 777; *Kake*, 795

F.3d at 966 ("'Unexplained inconsistency' between agency actions is 'a reason for holding an

interpretation to be an arbitrary and capricious change.'") (quoting *Nat'l Cable & Telecomms.*

*Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005)); *Hooper v. Nat'l Transp. Safety Bd.*,

841 F.2d 1150, 1151 (D.C. Cir. 1988) ("We have made it clear an agency's failure to enforce

such a procedural rule uniformly is arbitrary and capricious.").

      Here, Defendants failed to adequately explain their departure from their own precedent

and their disparate treatment of Plaintiffs' Amended Petition.

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 17

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

*First*, Defendants did not explain their departure from past precedent after having approved ***Treez's many prior similar petitions for years***.  In fact, despite admitting that "USCIS will generally defer to its prior determination," and would not do so only where there was a material error, a material change, or "new material information," Defendants did not even explain the reason why they would not defer to the prior adjudications.  ECF No. 34-1 at 2. Instead, Defendants obliquely stated:  "Upon review of the evidence provided with the initial submission, questions arose regarding the legality of the services to be provided by the beneficiary.  Therefore, USCIS will not defer to its prior approval in adjudicating this petition." *Id.*  Because there were no material changes or new information presented, Defendants must be relying on the (unstated) basis that *they* previously made an error.

In addition to failing to identify any reason for their reversal, Defendants provided no explanation for why they apparently ***repeated that same error five different times***, in approving five materially identical Treez petitions from 2016 through 2021.  *See, e.g.*, ECF Nos. 34-1 at 46; 37-1; 37-3; 37-6; 37-7; *see also* ECF No. 75-1 at 240 (internal correspondence during adjudication identifying Treez past petitions with "identical" job duties that USCIS approved). Further, Defendants made no attempt to provide a "reasoned explanation" showing that the new application of the Illegality Rule is "permissible under the statute," supported by "good reasons," or any reasons for ignoring the facts and circumstances from the earlier petitions by Treez (and many others) that they approved.  *Kake*, 795 F.3d at 966.  To the contrary, Defendants' only reference to Treez prior petitions disregards them by claiming that "questions arose regarding the legality of the services to be provided by the ***beneficiary***," before analyzing the nature of some customers serviced by the ***petitioner***.  ECF No. 34-1 at 2-5 (emphasis added).  Because this vague and conclusory reason for departing from years' worth of past precedent does not allow the Court to evaluate "the basis of the agency's action" or "the consistency of that action with the agency's mandate," *Atchison*, 412 U.S. at 808, Defendants failed to provide an adequate explanation under the APA.  Their departure was arbitrary and capricious.

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 18

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

***Second***, Defendants entirely fail to acknowledge—much less explain—why they have departed from precedent before 2017 or with regard to similarly situated petitioners.  Indeed, Defendants supplied ***no evidence*** that they ever applied the Illegality Rule before 2017.  There is significant evidence, however, that Defendants routinely approved H-1B petitions from 2016 through 2021 for other businesses who were openly serving state-legal cannabis clients, including for other software providers like Treez.  *See, e.g.*, ECF Nos. 86-3; 86-14; 86-18; 86-19; 86-21.  Further, the record also reveals that Defendants routinely declined to apply the Illegality Rule at all, even where other petitioners made clear their employment involves providing services to the state-legal cannabis industry, again like Treez.  *See, e.g.*, ECF Nos. 86-1; 86-22; 86-24; 86-25; 86-26; 86-27; 86-28; 86-29; 86-30; 86-31.  Defendants offered no explanation for their disparate, inconsistent, and arbitrary application of the Illegality Rule.  Nor is there one.  The record shows the Rule's application arbitrarily depends on the whims of the USCIS officer or supervisor who happens to review the petition.  *See supra* at 6-7.

Indeed, Defendants even approved a ***cannabis dispensary***'s H-1B petition in August 2021 for a "Management Analyst" without even invoking (much less enforcing) the Illegality Rule.  *See* ECF No. 86-15.  In other words, before arbitrarily denying Treez's Amended Petition for purportedly "aiding and abetting activities related to" violations of the CSA, Defendants approved a petitioner who was itself potentially committing direct violations of the CSA by selling cannabis.  That is the definition of arbitrary and capricious.  Further, although they have still refused to turn over hundreds of other similarly situated petitions, *see* ECF Nos. 69 at 13-14; 88 at 2, Defendants do not contest that they have approved a multitude of petitions by other SaaS providers, such as Microsoft or Hewlett-Packard, even though the agency ***knows*** those petitioners provide software services to state-legal cannabis clients, like Treez does.  *See* ECF No. 86-14 at 22-24.  Such unexplained inconsistencies, which do not uniformly apply the Illegality Rule, further highlight the arbitrary and capricious nature of Defendants' denial of the Amended Petition.  *See Burlington*, 403 F.3d at 777; *Kake*, 795 F.3d at 966.

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 19

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

In short, Defendants failed to provide any rationale or reasoned analysis of the legal or factual basis supporting their decision to reverse course and deny Treez's Amended Petition. Defendants set forth ***no justification*** for treating Treez's Amended Petition different than: (1) Treez's identical original petition that the agency approved; (2) all of Treez's other similar petitions over the course of many years that the agency approved; (3) the other SaaS providers who serve the state-legal cannabis industry and whose petitions the agency approved; or (4) all the other similarly situated petitioners who provide various services to the state-legal cannabis industry and whose petitions the agency routinely approved. This stark disparate treatment without any justification renders Defendants' denial arbitrary and capricious. *See, e.g.*, *Humane Society*, 626 F.3d at 1049–51 (agency acted arbitrarily and capriciously where the agency took a "seemingly inconsistent approach" with the approach it had taken previously); *Cissna*, 341 F. Supp. 3d at 1063 (finding action arbitrary and capricious because "USCIS does not dispute Plaintiffs' assertion that it regularly approved SIJ petitions before February 2018" and then began denying them); *Nat'l Urb. League v. Ross*, 489 F. Supp. 3d 939, 997 (N.D. Cal. 2020) (agency's "inconsistent approach" to citizenship count was arbitrary and capricious); *St. Lawrence Seaway Pilots Ass'n, Inc. v. U.S. Coast Guard*, 85 F. Supp. 3d 197, 207 (D.D.C. 2015) (invalidating agency action as arbitrary and capricious despite claim that no departure occurred); *Baptist Med. Ctr. v. Burwell*, 2015 WL 13808477, at *9 (D.D.C. 2015) (invalidating action as arbitrary and capricious where agency departed from precedent and "completely neglected this critical issue").

### 2. Defendants Arbitrarily Applied an Incorrect Legal Standard for Aiding and Abetting.

Defendants' denial was also unlawful because it applied an erroneous legal standard for aiding and abetting. Under the APA, an agency's decision is also arbitrary and capricious "if the agency applies an incorrect legal standard." *See Gen. Land Off. v. U.S. Dep't of the Interior*, 947 F.3d 309, 320 (5th Cir. 2020) (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)). Thus, even if the agency provides sufficient explanation, its decision is necessarily arbitrary where the

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 20

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

agency's conclusion rests on an erroneous view of the law.  *See Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, 422 F. Supp. 2d 1115, 1146 (N.D. Cal. 2006) ("Because the Service's conclusion … is based on an erroneous conclusion of law, it is arbitrary and capricious.") (citing *Mendenhall v. Nat'l Transp. Safety Bd.*, 92 F.3d 871, 874 (9th Cir. 1996)); *Humane Soc'y of the U.S. v. Pritzker*, 75 F. Supp. 3d 1, 11 (D.D.C. 2014) ("NMFS acted arbitrarily and capriciously in applying an inappropriately-stringent evidentiary requirement at the 90-day stage.").  That is the case with Defendants' Denial Order here.

"[A] person is liable under [18 U.S.C. § 2(a)] for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of ***that*** offense, (2) with ***the intent of facilitating the offense's commission***."  *Rosemond v. United States*, 572 U.S. 65, 71 (2014) (emphasis added).  "An intent to advance some different or lesser offense is not [usually] sufficient: Instead, the intent must go to the specific and entire crime charged."  *Id.* at 76.  Thus, liability for aiding and abetting requires "sufficient knowledge and participation to indicate that [the alleged aider and abettor] knowingly and willingly participated in the offense in a manner that indicated he intended to make it succeed."  *United States v. Teffera*, 985 F.2d 1082, 1086 (D.C. Cir. 1993) (quoting *United States v. Raper*, 676 F.2d 841, 849 (D.C. Cir. 1982)).  21 U.S.C. § 846 likewise requires specific intent, and the defendant must "reach an agreement with the 'specific intent that the underlying crime be committed' by some member of the conspiracy.  *Ocasio v. United States*, 578 U.S. 282, 288  (2016).  As the Supreme Court recently affirmed, general knowledge or services that support an illicit actor are insufficient, as "aiding and abetting is inherently a rule of secondary liability for ***specific*** wrongful acts."  *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 494 (2023) (emphasis added).

Generally speaking, courts have long held that the sale of otherwise lawful products to businesses engaged in distributing a controlled substance is not itself a crime, and does not constitute an intent to join an underlying conspiracy or accomplish an illicit goal.  *See, e.g.*, *Direct Sales Co. v. United States*, 319 U.S. 703 (1943) (business that knowingly sold sugar and yeast to known bootleggers did not join conspiracy); *United States v. Superior Growers Supply,*

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 21

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

*Inc.*, 982 F.2d 173 (6th Cir. 1992) (hydroponic supply store did not conspire with or aid and abet customers growing cannabis by selling them hydroponic supplies).  In *In re Way to Grow, Inc.*, for example, the court held that the party's conduct in selling hydroponic equipment and gardening supplies to cannabis businesses was insufficient to show that they had any specific intent to further marijuana growing operations.  597 B.R. 111, 125 (Bankr. D. Colo. 2018), *aff'd*, 610 B.R. 338 (D. Colo. 2019).

Defendants' Denial Order rests on a fundamentally flawed view of aiding and abetting liability.  Defendants recite the CSA's prohibition against "knowingly or intentionally" manufacturing or distributing a controlled substance, ECF No. 34-1 at 2 (quoting 21 U.S.C. § 841(a)(1)), and prohibition against "aid[ing] and abet[ting] the cultivation, distribution, and possession of marijuana as defined in the CSA," *id.* (citing 21 U.S.C. § 846; 18 U.S.C. § 371; 18 U.S.C. § 2(a)).  Then, without addressing the case law or related standards, Defendants declare:  "Following a review of the evidence of record, it appears that the services to be provided by the beneficiary will ***aid or abet activities related to*** the manufacture, cultivation, distribution, or possession of marijuana."  ECF No. 34-1 at 4 (emphasis added).  This formulation underpinned Defendants' analysis and (erroneous) conclusion that Treez's business purportedly aids and abet violations of the CSA.  Defendants reasoned that "working for your organization involves providing marijuana dispensaries with business solutions" and "[t]hese services are intended to sustain and overhaul business solutions for marijuana dispensaries." *Id.* at 5.  As a result, Defendants concluded:  "Through the provision of these services to dispensaries, the beneficiary would, in fact, be aiding and abetting a violation of the CSA." *Id.*

Defendants formulated and applied an incorrect—and facially overbroad—standard for aiding and abetting liability.[6]  As an initial matter, aiding and abetting a crime requires showing a person's "affirmative act in furtherance of ***that*** offense," *Rosemond*, 572 U.S. at 71 (emphasis

---

[6] Defendants' lack of knowledge about the criminal standard for aiding and abetting and repeated assertions that they might be making a "mistake" is understandable, as they ignored OCC's legal advice to approve the petition and they have no special expertise in federal criminal drug law or mandate from Congress to assess those issues.

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 22

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

added), not just aiding and abetting "activities related to" another action that would constitute some unknown offenses.  In other words, a person cannot aid and abet a violation of the CSA by simply assisting secondary activities that are related to direct violations.  If that were the case, every store that sells hydroponics to cannabis producers would be guilty of aiding and abetting "activities related to" a violation of the CSA.

Further, and more fundamentally, the mere provision of software or software services to someone who may be engaged in illicit activity—or may later use the software to engage in those activities—does not meet the specific intent requirement.  Otherwise, every single service or goods provider who supplies electricity, phones, internet, to go bags, or computer paper to a cannabis dispenser could be charged with a crime because the goods or services "are intended to sustain" that business's operations.  *See Taamneh*, 598 U.S. at 499 ("Nor do we think that such providers would normally be described as aiding and abetting, for example, illegal drug deals brokered over cell phones—even if the provider's conference-call or video-call features made the sale easier.").  But as shown with other SaaS providers, Defendants do not actually apply the rule in such a manner, as it would mean that nearly every major technology company would be ineligible for nonimmigrant work visas.[7]  Instead, case law is clear that such liability is reserved for individuals whose actions are in direct support of a specific illicit act, which is committed with the intent and knowledge that their actions will further that crime.  Because Defendants applied an aiding and abetting standard that neither addresses nor comports with those requirements, their decision was arbitrary and capricious.

### 3. Defendants Arbitrarily Ignored Facts Establishing That Plaintiffs Do Not Aid Nor Abet Violations of Federal Law.

Defendants' denial was also arbitrary and capricious because it ignored facts establishing that neither Treez nor Mr. Pethe aid and abet any violations of the CSA.  An agency action is "arbitrary and capricious if the agency has ... offered an explanation for its decision that runs

---

[7] Defendants' disparate treatment of other SaaS providers on the grounds that they "work in all sorts of industries" and aren't "focused" on cannabis-related clients, *see* ECF No. 75-1 at 237, also reveals their fundamental misapplication of the law.  A person is just as guilty of aiding and abetting if they intend to facilitate the crimes of one or one hundred principals.

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 23

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

counter to the evidence before the agency." *State Farm*, 463 U.S. at 43.  And if the agency failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence, its action is also deemed arbitrary and capricious.  *Id.*; *E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 851–52 (9th Cir. 2020); *see also Genuine Co. v. EPA*, 890 F.3d 304, 312 (D.C. Cir. 2018) ("[A]n agency cannot ignore evidence contradicting its position.") (quoting *Butte Cty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010)).

Defendants' Denial Order ignored the "mountain of evidence … to support the petition more than meets the preponderance of the evidence standard."  *RELX, Inc. v. Baran*, 397 F. Supp. 3d 41, 55 (D.D.C. 2019); *Matter of Chawathe*, 25 I. & N. Dec. 369, 376 (2010) (requiring approval "if the petitioner submits relevant, probative, and credible evidence that … is 'more likely than not' or 'probably' true," "[e]ven if the director has some doubt as to the truth"). Defendants rested on an erroneous standard that itself was "not 'based on a consideration of the relevant factors,'" *RELX*, 397 F. Supp. 3d at 55 (citation omitted), which required evaluating evidence concerning issues such as the education and expertise of the beneficiary, the special nature of the role, and compliance with certain wage requirements.  *See supra*, § III.B.  In addition to that failure, Defendants also ignored the evidence that Plaintiffs submitted, including:

- The description of Treez's software services, which are standard point-of-sale and inventory tracking software, with fees that do "not vary based on the volume of cannabis sold or the number of transactions" and no control over the transactions themselves, *see* ECF No. 34-1 at 121-22; and

- The description of Mr. Pethe's duties for Treez, which show that he is solely responsible for designing, building, and managing software systems that are neither dependent on the number or nature of transactions and do not have any direct interaction with the sales themselves, *see id.* at 38, 123-24.

Treez offers its software services for a flat subscription fee, reflecting the value of the data to its customers and the costs of providing the service.  Although Treez collects a fee each time a retailer uses the TreezPay software to process a transaction, that fee is also unrelated to

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 24

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

the value or nature of the transaction. The fee reflects the utility and costs of the service itself, not a share of the transaction. Similar per-transaction fee models are common for point-of-sale software across other industries. Indeed, Treez collects the same fee whether the retailer sells legal goods like rolling papers or potentially illicit products—and Treez has no knowledge of or interest in the type of transaction that occurs. Treez thus lacks any specific intent or knowledge to further any particular violation of the CSA. And Mr. Pethe—as a software engineer who simply develops computer code for Treez products that can be used by any customer regardless of their products or nature of the transactions—also does not have the requisite connection to the clients' distribution of cannabis or intentional support of any specific transactions.

Defendants assert that Mr. Pethe is engaged in illegal employment because he "would provide dispensaries with software solutions and business applications at [Treez] direction," which "are intended to sustain and overhaul business solutions for marijuana dispensaries." ECF No. 34-1 at 5. But this is incorrect as a matter of law and fact. Mr. Pethe only provides his services *to Treez*, and those services are not intended to support any particular violation of the CSA. Instead, like any software engineer at Microsoft or AT&T, he simply helps build and maintain products for any customer's use—regardless of the nature of their business. While "USCIS was free to take issue with the substance, credibility, or weight of the evidence submitted and explain why it took such issue, … [it] was not permitted to pretend the evidence did not exist." *Stellar IT Sols., Inc. v. U.S. Citizenship & Immigr. Servs.*, 2018 WL 6047413, at *7 (D.D.C. 2018). Because "Defendants took an inconsistent approach that failed to 'articulate a rational connection between the facts found and the choice made,'" *Ross*, 489 F. Supp. 3d at 997 (quoting *State Farm*, 463 U.S. at 43), their decision was arbitrary and capricious under the law.

## IV.    CONCLUSION

For the above reasons, the Court should grant summary judgment for Plaintiffs, declare the Illegality Rule to be invalid, and order Defendants to approve Plaintiffs' Amended Petition before his underlying petition expires on January 12, 2025.

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 25

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

1    DATED this 18th day of September, 2024.

2

3                                      DAVIS WRIGHT TREMAINE LLP
                                       Attorneys for Plaintiffs, Treez, Inc., and Ameya
4                                      Pethe

5
                                       By  s/ John A. Goldmark
6                                          John A. Goldmark, admitted *Pro Hac Vice*
                                           Diane Butler, admitted *Pro Hac Vice*
7                                          Caesar Kalinowski IV, admitted *Pro Hac Vice*
                                           920 Fifth Avenue, Suite 3300
8                                          Seattle, WA 98104
                                           Telephone: 206-622-3150
9                                          Email: JohnGoldmark@dwt.com
                                               DianeButler@dwt.com
10                                             CaesarKalinowski@dwt.com

11                                         Nicole Phillis, SBN 291266
                                           865 S Figueroa Street, Suite 2400
12                                         Los Angeles, CA 90017
                                           Telephone: 213-633-8657
13                                         Email: NicolePhillis@dwt.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 26

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax

<u>PROOF OF SERVICE</u>

I hereby certify that on September 18, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Aaron Goldsmith
Brian Schaeffer
Joseph G. Nosse

United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 598-7311
Facsimile: (202) 305-7000
E-Mail: aaron.goldsmith@usdoj.gov
        brian.schaeffer@usdoj .gov
        joseph.g.nosse@usdoj .gov

*Attorneys for Defendants*

DATED this 18th day of September, 2024.

By  *s/ John A. Goldmark*
        John A. Goldmark

NOTICE OF MOTION FOR SUMMARY JUDGMENT
AND MEMO IN SUPPORT
Case No. 3:22-cv-7027 - 27

Davis Wright Tremaine LLP
LAW OFFICES
865 S Figueroa Street, Suite 2400
Los Angeles, CA  90017
213.633.6800 main · 213.633.6899  fax