UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TREEZ, INC., et al.,

               Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, et al.,

               Defendants.

Case No. 22-cv-07027-RS   (TSH)

**ORDER RE MOTION TO ENFORCE
COURT ORDER AND FOR
SANCTIONS; ORDER TO SHOW
CAUSE RE CIVIL CONTEMPT**

Re: Dkt. No. 60

## I.     INTRODUCTION

Plaintiffs Treez, Inc., and Ameya Pethe bring this suit under the Administrative Procedures Act ("APA"), alleging Defendants[1] wrongfully denied their H-1B visa petition.  Pending before the Court is Plaintiffs' motion to enforce this Court's orders compelling Defendants to supplement the Administrative Record.  ECF No. 60 (Motion); *see* ECF Nos. 45 (June 2023 Order Granting Motion to Compel Supplementation, "June 2023 Order"), 49 (Order Overruling Objection to Determination of the Magistrate Judge).  Defendants filed an opposition (ECF No. 69), and Plaintiffs filed a reply (ECF No. 71).  Defendants filed a notice on May 10, 2024 (ECF No. 75) to which Plaintiffs responded on May 14, 2024 (ECF No. 76).  The Court held a hearing on May 23, 2024 and ordered Defendants to file a supplemental declaration.  Defendants filed a supplemental declaration on June 13, 2024 (ECF No. 81) and Plaintiffs filed a response on June 27 (ECF No. 83).  Defendants then filed another declaration on June 28, 2024 (ECF No. 84), and Plaintiffs filed a response on July 2, 2024 (ECF No. 85).  Defendants filed an additional notice on August 12,

---

[1] Defendants are the United States Department of Homeland Security, United States Citizenship and Immigration Services ("USCIS"), USCIS Director Ur M. Jaddou, and Kristine R. Crandall as the Acting Director of the USCIS California Service Center.

United States District Court
Northern District of California

2024 (ECF No. 86) to which Plaintiffs responded on August 20, 2024 (ECF No. 88).  Defendants

filed another notice on August 27, 2024 (ECF No. 89).  Having considered the parties' positions,

relevant legal authority, and the record in this case, the Court **GRANTS IN PART AND DENIES**

**IN PART** the motion for the following reasons.

## II.    BACKGROUND

Treez is an enterprise cloud commerce platform that provides software solutions for use by

its customers, which include state-legal cannabis brands and retailers.  Compl. ¶ 8, ECF No. 1.  On

December 22, 2021, Treez petitioned USCIS for H-1B status for Ameya Pethe, a software

developer from India, to work as its Director of Development Operations while residing in the

state of Missouri.  *Id.* ¶¶ 20–21 & Ex. A (Treez's Petition for a Nonimmigrant Worker).  On

January 4, 2022, Defendants approved Plaintiffs' petition for Mr. Pethe to work for Treez through

January 2, 2025.  *Id.* ¶ 23.  Although Defendants approved Treez's petition in January 2022, they

later denied an amended petition to change the location of Mr. Pethe's employment because "the

services to be provided by the beneficiary will aid or abet activities related to the manufacture,

cultivation, distribution, or possession of marijuana" and thus constitute illegal employment.  *Id.*

¶¶ 23, 25–29, 31 & Ex. B (approved petition), Ex. F (Denial Order).

On November 9, 2022, Plaintiffs filed this suit for declaratory and injunctive relief,

alleging Defendants violated the APA by denying the amended petition, a decision which was

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "in

excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  *Id.* ¶¶ 38–47

(citing 5 U.S.C. § 706(2)(A), (C)).  Plaintiffs allege Defendants "[f]ailed to explain or articulate

the reasons for departing from past precedent, including . . . other H-1B petitions for non-

immigrants employed by companies that provide independent services to customers in the state-

legal cannabis industry," *id.* ¶ 45(b), and applied a new erroneous legal standard for H-1B visas,

*id.* ¶¶ 45.a, 45.c, 46.  Plaintiffs also allege Defendants failed to follow the APA's notice-and-

comment procedures, which they allegedly violated by enacting a new rule that substantially

diverted from past regulatory practices and requirements.  *Id.* ¶¶ 49–55 (citing 5 U.S.C. § 553).

On January 18, 2023, Defendants served a copy of the Administrative Record on Plaintiffs'

counsel, which included the primary petition materials previously exchanged between the parties. May 2023 Goldmark Decl. ¶ 3, ECF No. 38-1.  The next day, Plaintiffs demanded supplementation, contending the record was insufficient and requesting "(1) internal agency records, policies, and communications relating to the H-1B denial here, and assessment and implementation of their 'illegality' determination; and (2) prior agency decisions on other H-1B petitions with employers related to a state-legal cannabis business[.]"  *Id.* ¶ 4 & Ex. A to Decl. at 1–2.

On February 21, 2023 Defendants supplemented the Administrative Record, which they filed with the Court, but which still omitted the documents Plaintiffs had requested.  ECF No. 34-2.  On March 9, 2023 Defendants again supplemented the Administrative Record to include documents concerning other past H-1B petitions filed by Treez, but the record still omitted internal deliberative materials and documents regarding other petitioners similarly situated to Treez.  ECF No. 37.

On April 6, 2023 Defendants confirmed in email that they would not search their paper files or STACKS file storage system but that another system called ECHO could be searched by template.  May 2023 Goldmark Decl. ¶ 8 & Ex. B to Decl. at 4–5.  Plaintiffs subsequently requested Defendants search their ECHO system for relevant documents, a request Defendants denied on April 13.  May 2023 Goldmark Decl. ¶ 9 & Ex. B to Decl. at 1–3 ("Defendants maintain their previous objections to the production of documents related to cannabis-related petitions" and "the position that the Administrative Record is complete and no supplementation is necessary").  On May 26, 2023 Plaintiffs moved to compel Defendants to supplement the Administrative Record.  ECF No. 38, Motion to Compel.

On June 27, 2023, this Court granted Plaintiffs' motion to compel, ordering Defendants "to search for and produce as part of the Administrative Record (1) internal deliberative documents concerning the petitions and rule change at issue, or a detailed privilege log identifying any withholdings, and (2) materials concerning past adjudications of similarly situated petitions and any departure from those decisions or their past policy."  ECF No. 45 at 9, Order Granting Motion to Compel.  Defendants moved for relief from the Court's June 27 order, and on July 28, the

United States District Court
Northern District of California

1   district court overruled Defendants' objection to the determination of this Court.  ECF Nos. 46;

2   49.

3          On January 3, 2024, Defendants sent an updated copy of the administrative record and

4   privilege log to Plaintiffs' counsel.  March 2024 Goldmark Decl. ¶ 3, ECF No. 60-1.  Defendants

5   did not file a copy of the administrative record with the Court at that time.  The January 2024

6   administrative record included internal deliberations regarding Plaintiffs' H-1B petition and partial

7   records from eight other petitioners.  *Id.*  Plaintiffs' counsel requested that Defendants further

8   supplement the administrative record and privilege log, identifying purported deficiencies with the

9   administrative record and Defendants' search for documents.  *Id.* ¶ 4.  Defendants emailed

10  Plaintiffs' counsel a revised version of their privilege log on February 16, 2024.  *Id.* ¶ 6 & Ex. B to

11  Decl.  Counsel met and conferred over these issues on January 11, 2024 and March 7, 2024, but

12  Defendants refused to further supplement the administrative record at that time.  March 2024

13  Goldmark Decl. ¶¶ 4–5.

14         On March 21, 2024, Plaintiffs filed the instant motion to enforce the Court's June 27, 2023

15  order, and for sanctions in the form of Plaintiffs' attorneys' fees incurred to obtain a complete

16  administrative record.  ECF No. 60 at 1–2, Plaintiffs' Motion to Enforce Court Orders and for

17  Sanctions ("Motion").  Defendants filed an opposition on April 15.  ECF No. 69.  In support of

18  their opposition, Defendants submitted the declaration of Mary Burford, Associate Counsel within

19  the USCIS Office of the Chief Counsel ("OCC").  First Burford Decl. ¶ 1, ECF No. 69-1.

20  Plaintiffs filed a reply on April 22.  ECF No. 71.

21         On May 10, Defendants filed a notice informing the Court that they had produced

22  "additional extra-record material" Plaintiffs had requested in their Motion.  ECF No. 75.

23  Defendants contemporaneously filed eleven certified administrative records with certain materials

24  concerning Plaintiffs' H-1B petition and ten other H-1B petitions filed by petitioners in the

25  cannabis industry.  ECF Nos. 75-1–75-11.  Plaintiffs filed a response to this notice.  ECF No. 76.

26         On May 23, the Court held a hearing on Plaintiffs' Motion.  At the hearing, the Court

27  ordered Defendants to provide a supplemental declaration explaining their "search capabilities . . .

28  with respect to locating the items that the Court ha[d] ordered [them] to produce."  Hearing Tr. at

4

26, ECF No. 80.  The Court informed Defendants that the declaration should include, inter alia, the search methodologies available, their search capabilities and how far back they go.  *Id.*  In response, on June 13, 2024, Defendants filed the supplemental declarations of Shane M. Barney (ECF No. 81-1) and the second declaration of Mary H. Burford (ECF No. 81-2, "Second Burford Decl.").  Plaintiffs filed a response on June 27 (ECF No. 83).

On June 28, Defendants filed another notice and third declaration of Mary Burford updating the Court on additional searches Defendants had conducted since June 13.  ECF No. 84. Plaintiffs filed a response on July 2.  ECF No. 85.  On August 12, 2024, Defendants filed certified administrative records with materials concerning 37 H-1B petitions filed by petitioners in the cannabis industry that they had "located as a result of additional searches," based on the search parameters they identified in their June 28 notice and supplemental declaration.  ECF No. 86.  On August 27, 2024 Defendants filed certified administrative records with materials concerning two H-1B petitions filed by petitioners in the cannabis industry that they had located as a result of additional searches, based on the search parameters previously identified.  ECF No. 89.

### III.   LEGAL STANDARD

Federal courts have "inherent power to enforce compliance with their lawful orders . . ." *Shillitani v. United States*, 384 U.S. 364, 370 (1966).  This power extends "to the specific context of a mandate issued to a federal agency," *California v. United States DOL*, 155 F. Supp. 3d 1089, 1095–96 (E.D. Cal. 2016) (citing *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014)). "Should an agency neglect the orders of a federal court, an order enforcing the original mandate is . . . 'particularly appropriate.'"  *Id.* at 1096 (quoting *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984)).

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt."  *Spallone v. United States*, 493 U.S. 265, 276 (1990) (citation and quotation marks omitted).  Civil contempt is intended "to coerce the defendant into compliance with the court's order" or "to compensate the complainant for losses sustained" from the noncompliance. *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)).

United States District Court
Northern District of California

## IV.   DISCUSSION

### A.   Adequacy of the Search

Plaintiffs contend Defendants have failed to comply with this Court's order by failing to search locations where relevant documents would be located.  Motion at 8–10.  Plaintiffs ask the Court to require Defendants to search their paper files and STACKS file storage system for documents Plaintiffs requested and that the Court has ordered them to produce.  Defendants contend they complied with the Court's orders by conducting a thorough search.  Opp'n at 17–18.

### 1.   Search Capabilities

The supplemental declaration of Shane M. Barney (ECF No. 81-1) addresses the databases Defendants can search and methodologies they can use to locate files related to Form I-129 petitions for nonimmigrant workers, which include H-1B petitions.  These databases and methodologies include: Electronic Immigration System ("ELIS"), STACKS (not an acronym) (used to view content stored in the Content Management System ("CMS")), Person Centric Query System ("PCQS"), USCIS RAILS (not an acronym), Enterprise Correspondence Handling Online ("ECHO"), Portfolio Management Tool ("PMT"), and paper files.

Form I-129 petitions can be filed and adjudicated in paper, filed and adjudicated electronically online, or filed in paper and then digitized and adjudicated electronically.  *Id.* ¶ 8.  Form I-129 petitions filed online are stored in USCIS's case management system, ELIS.  *Id.* ¶ 11.  I-129 petitions that have been digitized are stored in an electronic repository called STACKS.  *Id.*  ELIS is searchable by A-number, social security number, ELIS online account number, email address, certificate number (for naturalization or certificates of citizenship), and Department of State case number.  *Id.* ¶ 17.  ELIS is not searchable by keyword.  *Id.*  To find relevant content in ELIS, USCIS officers must first find the record through a searchable term and can then open the case and review the content of each record.  *Id.*  Paper I-129 petitions are generally stored in physical files organized by receipt number.  *Id.* ¶ 10.  Physical I-129 receipt files may be located at four USCIS service centers, the National Records Center, and at a storage facility in Harrisonburg, Virginia, where they are stored long-term following adjudication.  *Id.* ¶¶ 10, 12.  The Harrisonburg storage facility does not index or store files by form type, adjudicative outcome, identity of

employer, or Form I-129 beneficiary.  *Id.* ¶ 15.

CMS "is a back-end repository for storing digital immigration-related content and record requests made under the Freedom of Information Act and Privacy Act[.]"  *Id.* ¶ 18.  STACKS is the system that USCIS, ICE and CBP personnel use to view the content stored in CMS.  *Id.*  To use STACKS, users must first locate records by A-number or receipt number.  *Id.*  There is no way to search the entire repository by keyword or word search, nor can users conduct a keyword or word search across all files within a particular case record in STACKS.  *Id.*  However, individual PDFs within a case record are searchable, and users can "conduct a 'Control 'F' search to locate keywords within the specific document to find responsive materials."  *Id.* ¶ 19.

USCIS uses two systems – the Person Centric Query System (PCQS) and USCIS RAILS (not an acronym) to locate paper and electronic records that may be within USCIS's custody.  *Id.* ¶ 12.  PCQS is used "to help officers quickly locate A-numbers or receipt numbers for specific cases."  *Id.* ¶ 13.  PCQS is searchable by A-Number (a unique identifier for "foreign nationals who have requested immigration benefit(s) or who are the subject of enforcement actions[,]" *id.* ¶ 5); application ID, organization/firm name; name, date of birth, and country of birth; certificate number, USCIS account ID; receipt number; and social security number.  *Id.* ¶ 13.  USCIS RAILS is a nationwide tracking system that contains electronic data related to physical and electronic file locations.  *Id.* ¶ 14.  It does not store case content.  *Id.*  USCIS is not searchable by keyword and requires the applicable A-number or receipt number.  *Id.*

ECHO is a correspondence preparation and management system that creates standardized templates, which USCIS officers use "to draft, modify and export official notices for printing."  *Id.* ¶¶ 20–21.  ECHO has been in use since 2015 and cannot be used to search for documents that predate it.  *Id.* ¶ 20.  ECHO is searchable by form type, letter template, keyword, author, author organization, receipt number, A-number, letter status, and by date.  *Id.* ¶ 21.  Keyword search privileges are limited to "a select number of high-level technical users such as System Administrators and system 'super users.'"  *Id.*  The keyword search in ECHO is sensitive to spacing and special characters.  *Id.*  ECHO is not a repository of final agency documents and does not store official records.  *Id.* ¶ 23.

PMT is a management tool used only by the Office of Chief Counsel ("OCC") attorneys and paralegals. *Id.* ¶ 24. PMT is not accessible outside of OCC and is not directly linked to any of the other USCIS case management systems or electronic document repositories. *Id.* ¶¶ 24, 26. PMT "includ[es] the date a request for legal advice, notice of litigation, or legal question is received[.]" *Id.* ¶ 25. Each request receives an item number. Service items can be searched by item number and by keyword; they sometimes contain PDFs or uploaded emails, which can be reviewed and searched only if an OCC attorney knows the item number and opens the uploaded documents. *Id.* PMT records are deleted within six months after an OCC case is closed, i.e., after a decision becomes final and is not appealed. *Id.*

### 2.    Searches Performed and General Deficiencies in Administrative Record

The Court finds Defendants' search was inadequate. Defendants' declarations underscore the myriad problems with their initial search and leave several questions unanswered. The certified administrative records Defendants submitted in May and August 2024 do not fully rectify the problems with Defendants' searches.

Plaintiffs requested Defendants search all paper filings dating back to 1996, when California legalized medical marijuana. First Decl. of Mary Burford ¶ 14; Opp'n at 4. None of the certified administrative records Defendants have filed concern petitions from before 2017. Initially, Defendants indicated that due to retention schedules, "filings from 1996 are no longer available." First Burford Decl. ¶ 14; Ex. A to March 2024 Goldmark Decl. at 1, ECF No. 60-2. Through the May 2024 hearing on Plaintiffs' Motion, however, Defendants failed to provide retention schedules and did not indicate the earliest year for which filings would be available or the time frame for which Defendants performed their search. After the May 23, 2024 hearing, in response to the Court's order for supplemental briefing, Defendants attested that USCIS's retention schedule requires that Form I-129 receipt files be destroyed no earlier than three years and no later than 10 years from the date of the UCSIS adjudication, and that they are generally destroyed six years after adjudication. Barney Decl. ¶ 7. Defendants also maintained, however, that PCQS records dating back to 1996 *are* available. *Id.* ¶ 13. Defendants did not indicate whether the data attached to the PCQS records would be destroyed pursuant to USCIS's retention

schedules.  *See generally* Barney Decl.  Defendants did not state whether this retention schedule applies to records in each of their databases and repositories.  *Id.*  None of the supplemental declarations Defendants submitted indicate the time frame for which Defendants performed their search.

The Court finds the searches Defendants conducted in response to the Court's order to compel supplementation of the administrative record were insufficient on their face.  In support of Defendants' opposition to Plaintiffs' Motion, Burford explained that she searched ECHO for cases "utiliz[ing] a certain template paragraph containing the phrase 'illegal or invalid employment.'" First Burford Decl. ¶¶ 5–6.  Burford stated that this phrase "came into wider use after the issuance of a USCIS Administrative Appeals Office ('AAO') decision" in 2017.  *Id.* ¶ 6.  However, Burford did not state how long USCIS had used this template paragraph in ECHO, nor did she aver that it was used for all H-1B petitioners in or whose customers are in the state-legal cannabis industry and that were evaluated for potential illegality under the Controlled Substances Act ("CSA").  Rather than conducting any further ECHO searches at the time, Burford averred that she knew she "had seen more marijuana-related employment petitions than [she] located in ECHO" and "looked through [her] own archives for past requests for advice concerning adjudications that were potentially impacted by the cannabis issue."  *Id.* ¶ 8.  Burford also searched "completed inquiries that were sent through the California Service Center duty attorney email box for review, as well as the OCC's database for logging inquiries."  *Id.* ¶ 9.  Burford did not explain in her first declaration why this search was limited to the California Service Center.  Burford later averred that she did not ask USCIS personnel to conduct a search of other service centers because most H-1B petitions are adjudicated in the California Service Center and because her "previous nationwide searches in ECHO and PMT had only identified a single petition from the Vermont Service Center that was responsive to the Court's Order."  Second Burford Decl. ¶ 33.   At the time, Burford did not indicate that she searched any other locations or databases for responsive documents.  *See generally* First Burford Decl.  In response to the Court's order for supplemental briefing, Burford stated that she also searched PMT using the terms "cannabis" and "marijuana" and identified four more similarly situated petitions.  Second Burford Decl. ¶ 17.

United States District Court
Northern District of California

Once her searches had yielded a list of potentially responsive receipt numbers, Burford used RAILS, STACKS, and ELIS to locate the files and put together certified administrative records. *Id.* ¶ 18–22.  For petitions that were adjudicated online in ELIS, Burford downloaded PDF copies of documents from ELIS.  *Id.* ¶ 21.  Burford searched RAILS for the location of the paper receipt files and requested that they be shipped to the California Service Center.  *Id.* ¶ 19. Burford also checked CMS/STACKS for electronic copies of those files, which would obviate the need to obtain physical copies.  *Id.* ¶ 20.

Defendants' principal objection to Plaintiffs' request for paper filings is that searching the paper files and STACKS system would be impractical, as it would require a manual search of files.  Defendants did not raise a burden argument in their briefing on Plaintiffs' 2023 motion to compel supplementation of the administrative record.  *See* Order Granting Motion to Compel at 9 n.2; *see generally* Defs.' Opp'n to Motion to Compel, ECF No. 41.  In support of their opposition to this Motion, Defendants averred that apart from "searching for specific template language, there is no practical way to search for past filings containing references to cannabis and/or marijuana" because neither STACKS system nor ELIS is searchable by keyword.  First Burford Decl. ¶ 14. This proved at least partially untrue, as ECHO allows certain users to search "Form I-129 correspondence" by keyword.  *See* Third Burford Decl. ¶ 7; *see also* Second Burford Decl. ¶ 14 (averring that Burford only learned some ECHO users have keyword search privileges while in the process of drafting her second declaration).  After the May 23, 2024 hearing on Plaintiffs' motion, Burford directed a USCIS employee with search privileges to conduct a keyword search of ECHO. Third Burford Decl. ¶ 7; *see also* Second Burford Decl. ¶ 14.  Following the hearing, Burford also contacted the duty attorney boxes at the other service centers "to request that they search their archives for similarly situated petitions."  Second Burford Decl. ¶ 33.

The fact that Defendants produced materials for the overwhelming majority of similarly situated petitions (ECF Nos. 75, 86, 89) only after Plaintiffs filed this motion to enforce is all you need to know to conclude that Defendants did not initially comply with the Court's order. Moreover, the additional record materials Defendants have filed through last month do not remedy all of the deficiencies with Defendants' earlier searches.  First, Defendants failed to conduct

searches that they had informed Plaintiffs they would conduct.  In January 2024, Defendants represented to Plaintiffs' counsel that they would add "hemp," "CBD," and "cannabinoids" to their list of search terms "to the extent that the systems allow for keyword search[.]"  Ex. A to March 2024 Goldmark Decl. at 1.  Defendants do not indicate that they ever attempted to locate documents using these search terms.  *See generally* First Burford Decl., Second Burford Decl., Third Burford Decl.  There is thus no evidence to indicate that this deficiency has been addressed.

Second, Defendants' declarations further indicate that Defendants unilaterally decided to omit from their administrative records certain documents they were required to search for and produce.  In her third declaration, for example, Burford attests that she and her colleagues culled the list of H-1B petitions located in ECHO that mentioned "cannabis" or "marijuana" by "determin[ing] whether employment related to the cannabis and/or marijuana industry was a factor in the adjudication."  Third Burford Decl. ¶ 9.  Burford's declaration does not explain why she and her colleagues trimmed down the list of H-1B petitions in this way, nor is it entirely clear what Burford means by "a factor in the adjudication."  Technically speaking, Burford's declaration does not say whether Defendants *included* the petitions where employment related to the cannabis and/or marijuana industry was a factor in the adjudication or *excluded* those.  However, a review of the administrative materials filed at ECF No. 86 makes clear that those were the ones that were included.  This means that Defendants excluded the petitions where employment related to the cannabis and/or marijuana industry was *not* a factor in the adjudication, which is presumably the evidence that is most likely to be helpful to the Plaintiffs in this case.  These petitions are clearly within the scope of the Court's order granting Plaintiffs' motion to compel.  *See* June 2023 Order at 9 (ordering Defendants to produce as part of the administrative record "materials concerning past adjudications of similarly situated petitions and any departure from those decisions or their past policy.").  The order referred to similarly situated *petitions*.  This lawsuit alleges that Defendants have treated similarly situated petitions differently in an arbitrary and capricious way.  Excluding from the administrative record similarly situated petitions *because Defendants treated them differently* (i.e., employment related to the cannabis and/or marijuana industry was not a factor in the adjudication) is a violation of the Court's order and inaccurately and unfairly stacks

11

1    the record in Defendants' favor.  Defendants' search is thus deficient to the extent they excluded

2    from their search H-1B petitions involving employment in the cannabis industry that were

3    approved, withdrawn, or denied without consideration of whether such employment would violate

4    the CSA.

5         Accordingly, the Court **ORDERS** Defendants (1) to add "hemp," "CBD," and

6    "cannabinoids" to their list of search terms for all databases that allow keyword searches, and (2)

7    to search for and produce materials concerning past adjudications of H-1B petitioners in the

8    cannabis or marijuana industry regardless of whether USCIS considered the petitioner's

9    employment in that industry to be "a factor in the adjudication" of their petition.

10   **B.      Internal Deliberative Documents Concerning the Petition and Rule Change at Issue**

11        In its June 2023 order granting Plaintiffs' motion to compel supplementation, the Court

12   ordered Defendants "to search for and produce as part of the Administrative Record . . . internal

13   deliberative documents concerning the petitions and rule change at issue, or a detailed privilege

14   log identifying any withholdings[.]"  Order Granting Motion to Compel at 9.  Plaintiffs contend

15   Defendants have failed to comply with the Court's order by failing to produce "(1) internal

16   deliberative materials regarding other similarly situated petitioners, (2) internal deliberative

17   materials regarding the adoption of the 'illegality' rule, or (3) a detailed and supported privilege

18   log."  Motion at 12–13.  Defendants contend they have complied with the Court's order "by

19   searching for and producing materials concerning the H-1B petitions submitted by Treez."  Opp'n

20   at 6.

21        Defendants emailed Plaintiffs' counsel a revised version of their privilege log on February

22   16, 2024, describing internal deliberative documents for which Defendants asserted deliberative

23   process privilege, attorney-client privilege, or other protections.  March 2024 Goldmark Decl. ¶ 6

24   & Ex. B to Decl. ("February 2024 Privilege Log").  On May 10, 2024, Defendants filed a notice to

25   the Court that "USCIS has produced additional extra-record material that Plaintiffs have requested

26   in their Motion to Enforce Court Orders[,]" including "the requested additional internal

27   communication[.]"  ECF No. 75 at 1–2.  With their May 10 notice, Defendants "provided a

28   revised privilege log indicating material being withheld under the attorney client and attorney

United States District Court
Northern District of California

1   work product privileges."  ECF No. 75 at 1–2; ECF No. 75-1 at 600–03 ("May 2024 Privilege

2   Log").

3          **1.      Petitions and Rule Change "At Issue"**

4          Plaintiffs contend Defendants have failed to comply with the Court's orders by failing to

5   produce internal deliberative materials regarding similarly situated petitioners.  Motion at 13.

6   Defendants contend they "reasonably interpreted the phrase 'petitions at issue' to mean the H-1B

7   petitions submitted by Treez."  Opp'n at 7.

8          In their complaint, Plaintiffs allege Defendants "[f]ailed to explain or articulate the reasons

9   for departing from past precedent, including . . . other H-1B petitions for nonimmigrants employed

10  by companies that provide independent services to customers in the state-legal cannabis industry,"

11  Compl. ¶ 45.b, ECF No. 1.  Plaintiffs' January 2023 demand for supplementation of the

12  Administrative Record included a request for "internal agency records, policies, and

13  communications relating to the H-1B denial here, and assessment and implementation of their

14  'illegality' determination[.]"  May 2023 Goldmark Decl. ¶ 4 & Ex. A to Decl. at 1–2.

15         In deciding Plaintiffs' 2023 motion to compel supplementation, the Court considered

16  Plaintiffs' argument that "Defendants must provide any internal materials concerning their

17  consideration of Plaintiffs' petition *or* the adoption of a new rule or requirement for *such* petitions

18  because 'it is entirely reasonable to expect that the adjudication of multiple petitions—including a

19  request for evidence and consideration thereof—would generate some internal communications

20  among the various agencies and individuals involved.'"  ECF No. 4 (emphasis added).

21         The Court ordered Defendants "to search for and produce as part of the Administrative

22  Record (1) internal deliberative documents concerning the petitions *and rule change at issue . . .*

23  and (2) materials concerning past adjudications of similarly situated petitions *and any departure*

24  *from those decisions or their past policy*."  June 2023 Order at 9 (emphasis added).  While

25  Defendants are correct that "the petitions . . . at issue" mean Plaintiffs' petitions, neither Plaintiffs'

26  arguments nor the Court's order assumed that the rule change at issue or the departure from past

27  policy began or occurred solely in the consideration of Plaintiffs' petitions.  That's why the order

28  required Defendants to produce internal deliberative documents concerning the petitions *and* rule

United States District Court
Northern District of California

change at issue, as well as materials concerning past adjudications of similarly situated petitions *and any* departure from those decisions or their past policy. If the application of the illegality rule to petitions concerning employment in the state-legal cannabis industry first occurred in connection with someone else's petition, those deliberative documents were plainly required by the Court's order. Defendants' assertion that it complied with the Court's order "by searching for and producing materials concerning the H-1B petitions submitted by Treez" (Opp'n at 6) is therefore an admission of noncompliance.

Accordingly, the Court **ORDERS** Defendants to search for and produce as part of the Administrative Record internal deliberative documents concerning the rule change at issue and any departure from past adjudications of similarly situated petitions or past policy, regardless of which petition or petitions that occurred in connection with. As before, if Defendants believe any responsive document is privileged, they may provide a detailed privilege log identifying any withholdings.

### 2. Privileges

In their Motion, Plaintiffs argued that the deliberative process privilege did not protect from disclosure several documents for which Defendants had claimed deliberative process privilege. Mot. at 14–16; *see* February 2024 Privilege Log. Defendants' May 10, 2024 privilege log, which they filed after briefing on Plaintiffs' motion was complete, does not include any assertions of deliberative process privilege. *See generally* May 2024 Privilege Log, ECF No. 75-1 at 600–03; *see also* ECF No. 75 at 1–2. At the May 23, 2024 hearing, Defendants confirmed that they are "not withholding any documents under the deliberative process doctrine." Hearing Tr. at 3:3–3:4, ECF No. 80. Accordingly, this element of Plaintiffs' motion is now moot. Further, the Court does not understand Plaintiffs to be challenging any of Defendants' claims of attorney-client privilege or work product in their May 10, 2024 privilege log.

### C. Materials Concerning Past Adjudications of Similarly Situated Petitions and Any Departure from those Decisions or Past Policy

In granting Plaintiffs' motion to compel, this Court ordered Defendants "to search for and produce as part of the Administrative Record . . . materials concerning past adjudications of

United States District Court
Northern District of California

similarly situated petitions and any departure from those decisions or their past policy." ECF No. 45 at 9, Order Granting Motion to Compel. Plaintiffs contend Defendants have failed to produce all materials regarding similarly situated petitions, which Plaintiffs contend include (1) petitions filed by other software-as-a-service ("SaaS") providers that provide services to cannabis-related clients, (2) petitioners for non-H-1B visas that Defendants also evaluated for possible violations of the Controlled Substances Act ("CSA"), and (3) petitioners who were evaluated for possible violations of the CSA but were ultimately found not to violate the "illegality rule." Motion at 10–12. Plaintiffs further contend Defendants provided incomplete records for the petitions they did produce. Motion at 12.

After the briefing on Plaintiffs' motion was complete, Defendants filed eleven certified administrative records with certain materials concerning ten H-1B petitions filed by petitioners in the cannabis industry, including two H-1B petitions from companies in the hemp industry. ECF No. 75 at 2. On June 28, Defendants filed another notice and supplemental declaration updating the Court on additional searches they had conducted since June 13, when Defendants submitted the Barney Declaration and Second Burford Declaration. ECF No. 84. On August 12, 2024, Defendants filed certified administrative records with materials concerning 37 H-1B petitions filed by petitioners in the cannabis industry that they had "located as a result of additional searches," based on the search parameters they identified in their June 28 notice and supplemental declaration. ECF No. 86. However, Defendants' declarations regarding the production of these records indicate that their understanding of what qualifies as "similarly situated" petitions has not changed. *See generally* Second Burford Decl., Third Burford Decl.

### 1. Software-as-a-Service Providers That Do Not Primarily Serve the Cannabis Industry

Plaintiffs contend Defendants failed to comply with the Court's June 2023 order by failing to search for and include petitions by SaaS companies such as Microsoft, Intel, IBM, and Oracle. Motion at 10. The Court finds Defendants' determination that Treez was not similarly situated to those companies is reasonable. Plaintiffs do not dispute that Treez primarily serves clients in the state-legal cannabis industry, nor do they assert that the cannabis industry makes up any

significant portion of the business of the other SaaS companies they point to.  Moreover, as part of

Plaintiffs' December 20, 2021 request for extension of H-1B status beyond six years, Plaintiffs

directed Defendants to Treez's website for more "detail[ed] information of Treez."  ECF No. 1-1

at 25 (Ex. A to Compl.).  From the record, it appears that Treez's website includes numerous

references to cannabis and confirms that serving cannabis-related clients is central to Treez's

business, rather than incidental to the provision of SaaS services more generally.  *See* Ex. D to

March 2024 Goldmark Decl. (October 10, 2022 email produced by Defendants noting "[Treez's]

website states their role within the cannabis industry as: 'We're at the beginning of a multi-decade

secular trend, empowering the cannabis industry with technology[.]'").  The Court thus finds

Defendants reasonably determined that Treez was not similarly situated to SaaS companies such

as Microsoft, Intel, IBM and Oracle.  Accordingly, the Court will not order Defendants to search

for and produce petitions by those companies, nor any SaaS companies whose business or

clientele is not cannabis-related.

### 2.   Non-H-1B Visa Petitions

Plaintiffs contend that Defendants must produce materials related to non-H-1B petitions

for immigrant and non-immigrant visas where petitioners were evaluated under an "'illegality'

rule applied to purported violations of the [Controlled Substances Act]."  Motion at 11–12.  The

Court disagrees.

The Court previously ordered Defendants to produce "materials concerning past

adjudications of similarly situated petitions and any departure from those decisions or their past

policy."  Order Granting Motion to Compel at 9.  The text of this order could well apply to other

types of immigration petitions.  However, Plaintiffs' request for supplementation at issue in the

Court's June 2023 order was for "prior agency decisions on *other H-1B petitions* with employers

related to a state-legal cannabis business[.]"  May 2023 Goldmark Decl. ¶ 4 & Ex. A to Decl. at 1–

2 (emphasis added).  Further, the opening paragraph of Plaintiffs' motion to compel stated that

they were moving to compel "(a) internal deliberative records and (b) adjudications of past H-1B

petitions by similarly situated entities," ECF No. 38 at 1.  The Court's prior order granted

Plaintiffs' request to supplement the Administrative Record, and Plaintiffs cannot use it to expand

16

the scope of that request.  *See Sprengel v. Mohr*, No. 11-cv-8742-MWF (SPX), 2012 WL 12886494, at *3 (C.D. Cal. Dec. 7, 2012) (declining to "expand [discovery] request beyond its plain meaning" in considering motion to enforce order to compel discovery), *objections overruled*, 2013 WL 12128688 (C.D. Cal. Feb. 22, 2013).

### 3.   H-1B petitioners Who Were Evaluated for Potential Illegality under the Controlled Substances Act

#### a.   Exclusion of Hemp-Related Petitions

Defendants confirm they excluded hemp-related petitions from their search "because hemp is legal on both the federal and state level."  First Burford Decl. ¶ 12.  Plaintiffs object to the exclusion of hemp-related petitions, calling it "self-serving" and a "catch-22."  Mot. at 11.

Defendants contend that hemp-related petitions thus "do not fall within the phrase 'similarly situated[.]'"  Opp'n at 13.  However, Defendants acknowledge that hemp has only "been legal on the federal level since 2018."  *Id.*  This means that any hemp-related petitions filed before hemp was legalized at the federal level would raise the same concerns of illegal employment for which Plaintiffs allege their H-1B petition was denied.  *See* Compl. ¶¶ 3, 6, 31.  Moreover, Plaintiffs have demonstrated that even after hemp's legalization on the federal level, hemp-related petitions have raised the very considerations at issue in this litigation.  *See, e.g.*, Ex. D to March 2024 Goldmark Decl. (discussing Controlled Substances Act analysis regarding H-1B visa for employment with a company that sells hemp/CBD products); ECF Nos. 86-5 (certified administrative record related to 2019 H-1B petition for employment with hemp processor, including RFE regarding whether employment would violate federal law), 86-6 (same for a 2020 H-1B petition), 86-10 (certified administrative record related to 2019 H-1B petition for employment with hemp farming and CBD oil production, including notice of intent to deny and denial based in part on "illegal or invalid employment").  The Court thus finds that H-1B petitioners filing hemp-related petitions are "similarly situated" to Plaintiffs.

In their May 10 and August 12 productions of additional Certified Administrative Records, Defendants produced materials related to some hemp-related petitions.  *See, e.g.*, ECF No. 75 at 2 (noting filing of records related to H-1B petitions for employment in hemp industry); ECF Nos.

86-5, 86-10, 86-1 (materials related to H-1B petitions for employment with employers in hemp or hemp-derived product industry).  However, Defendants do not appear to have specifically searched for hemp-related petitions and continue to maintain that such petitions are outside the scope of the Court's order.  *See* Second Burford Decl. ¶ 33 (noting search of attorney archives yielding "six additional petitions that may be responsive to the Court's Order and one file involving the hemp industry"); *see also* ECF No. 75 at 2 (May 10 notice to the Court of filing of additional records, disagreeing with Plaintiffs' characterization of hemp-related H-1B petitioners as similarly situated to Plaintiff, but turning over records of materials related to two H-1B petitions "in an effort to resolve this dispute and move forward with the litigation").  Defendants have not confirmed that their production to this date includes materials related to *all* hemp-related H-1B petitions they have located.

Accordingly, the Court **ORDERS** that Defendants cannot exclude hemp-related petitions.

**b.     Other Petitioners Who Were Evaluated For Potential Illegality Under The Controlled Substances Act**

Plaintiffs ask the Court to order Defendants to conduct a search for similarly situated petitioners who were found not to violate the illegality rule.  Mot. at 12.  They complain that Defendants' productions as of the date this motion was filed only included petitions that were denied or threatened to be denied and omitted any approved applications (other than Treez's previously approved applications).  Mot. at 10 ("Conveniently absent were any materials related to *approved* applications") (emphasis original).  Below is Defendants' response:

> Moreover, with respect to part two of the Court's Order, Defendants searched for and produced materials concerning "similarly situated petitions," which Defendants interpreted as H-1B petitions submitted by companies engaged in the state-legal cannabis industry.  Again, Defendants used the plain language of the Order, in addition to language used by Plaintiffs throughout the course of this litigation, in order to reach this reasonable conclusion.  Plaintiffs now contend that "similarly situated petitions" should also include "those who (1) were found not to violate the illegality rule (like Buffalo Ventures), (2) provide SaaS to cannabis-related clients (like Microsoft, Intel, IBM, and Oracle), and (3) applied for different immigrant visas but were also evaluated under the 'illegality' rule applied to purported violations of the CSA."  ECF No. 60 at 12.  Plaintiffs never expressly requested these documents in their Motion or provided any justification for their production and, in any event, their attempt to

United States District Court
Northern District of California

dramatically expand the scope of the Court's Order is unreasonable
in light of the Order's plain language and context.  (Opp'n at 21)

In the first part of that response, Defendants say that they interpreted "similarly situated petitions" to mean "H-1B petitions submitted by companies engaged in the state-legal cannabis industry."  But in response to Plaintiffs' argument that "'similarly situated petitions' should also include 'those who (1) were found not to violate the illegality rule,'" Defendants make the incredible assertion that "Plaintiffs never expressly requested these documents in their Motion or provided any justification for their production and, in any event, their attempt to dramatically expand the scope of the Court's Order is unreasonable in light of the Order's plain language and context."

From the May and August filings, it seems that Defendants may have dropped this objection, as they have now included some petitions that were approved.  *E.g.*, ECF Nos. 86-2, 86-3.  Nonetheless, they have not formally abandoned the argument in their opposition brief that similarly situated petitions need not include ones that were found not to violate the illegality rule, so the Court must address the issue.  As discussed above, the Court ordered Defendants to produce, among other things, "materials concerning past adjudications of similarly situated petitions."  June 2023 Order at 9.  It's the *petitions* that have to be similar, not the agency response.  Again, Plaintiffs allege that Defendants have treated similarly situated petitions differently for arbitrary and capricious reasons.  Defendants cannot exclude from the administrative record similarly situated petitions simply because they ruled on them differently. Accordingly, the Court **ORDERS** Defendants to include in the administrative record H-1B petitions submitted by companies engaged in the state-legal cannabis industry that were found not to violate the illegality rule.

### 4. Scope of "Materials Concerning Past Adjudications"

Plaintiffs contend Defendants failed to comply with the Court's order by failing to include with their production several documents related to the petitions Defendants produced.  Motion at 12.  Materials Defendants excluded include "petitioner[s'] full application materials, RFE responses, supporting letters, executive summaries, and withdrawal letters."  *Id.*  In response, Defendants contend they "reasonably interpreted the Court's Order to be limited in scope to H-1B

United States District Court
Northern District of California

petitions and agency communications." Opp'n at 21.  Defendants contend their interpretation "is reasonable because it is USCIS's actions that are being challenged in this litigation." *Id.* at 16. But Defendants produced several materials beyond the H-1B petition itself upon which USCIS may have relied in deciding whether to approve Plaintiffs' own petition, particularly letters in support of Plaintiffs' application (ECF No. 75-1 at 25–27) and Plaintiffs' responses to Defendants' requests for evidence (*id.* at 171–184).  Materials submitted by similarly situated petitioners likewise form the factual basis upon which USCIS decided whether to approve their respective H-1B petitions. *See* June 2023 Order at 8.  The certified administrative records Defendants produced on May 10 and August 12 confirm this.  These records contain numerous references to petitioners' responses to requests for evidence ("RFEs") and to supporting letters. *See, e.g.*, ECF Nos. 75-2 at 28 (Notice of Intent to Deny noting that USCIS reviewed petitioner's RFE response), 32 (same), 33 (explaining that RFE response and supporting letter each support finding that business activities violate the CSA and aid and abet activities that violate the CSA); 86-15 at 1, 5, 15, 20–29 (certified administrative record indicating RFE for, and subsequent approval of, H-1B petition for employment with business "planting and selling cannabis for recreational purposes[,]" and omitting petitioner's RFE response).  The records also include agency communications in response to notices from petitioners requesting withdrawal. *See, e.g.*, ECF No. 75-2 at 27.  The Court thus finds that RFE responses, supporting letters, executive summaries, and withdrawal letters are materials necessary to develop a record that would allow the Court to assess Plaintiffs' claims that Defendants' denial of Plaintiffs' petition was arbitrary and capricious. *See, e.g.*, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415–16 (1971) ("arbitrary and capricious" review requires courts to "engage in a substantial inquiry[,] . . . a thorough, probing, in-depth review"); *Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005) ("Where an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld.")

The Court is unpersuaded by Defendants' apparent concern that providing materials submitted by similarly situated companies in support of H-1B petitions would result in the

disclosure of confidential proprietary information by Treez's competitors. Although Defendants claim their limited reading of the order "secured proprietary information and sensitive trade secret . . . information from being disclosed," Opp'n at 16, they provide no evidence that companies routinely disclose any such information in support of H-1B petitions. Defendants' August 12 production of additional Certified Administrative Records further undercuts this argument, as it includes some – but not all – responses provided in response to Requests for Evidence and Notices of Intent to Deny. *See, e.g.*, ECF Nos. 86-11 at 25–31 (RFE response); 86-10 at 25–29 (response to NOID), ECF No. 86-14 at 18–23 (same). Although these records include limited redactions of the individual petitioners' names, there is no indication that they include trade secrets or other confidential third-party information. Still, a review of Plaintiffs' application materials, which Defendants produced as part of the Administrative Record after briefing on this Motion was complete (ECF No. 75-1), shows that the "full application materials" for an H-1B petition do include certain types of materials that need not be included in the Administrative Record – namely, copies of passports, individual financial documents including tax returns and earnings statements, and personal educational documents including copies of diplomas and transcripts.

Accordingly, the Court **ORDERS** Defendants – as it did in June 2023 – to search for and produce materials concerning past adjudications for all H-1B petitions produced. Such materials include, but are not limited to, RFE responses, supporting letters, executive summaries, and withdrawal letters. To the extent Defendants find any of these documents include sensitive or proprietary information about Treez's competitors or individual petitioners, Defendants can redact such material and serve a redaction log on Plaintiffs.

**D. Sanctions**

**1. Monetary Sanctions**

Plaintiffs ask the Court to "order Defendants to pay Plaintiffs' attorneys fees in being forced to obtain a complete certified administrative record and to ensure compliance with the Court's Orders." Motion at 16. Defendants argue that Plaintiffs' request for monetary sanctions is improper because Defendants have not expressly waived sovereign immunity. Opp'n at 22–23.

The Ninth Circuit has indicated that the district court's inherent authority to control the

proceedings before it "includ[es] a limited power to waive the Government's immunity from sanctions." *Plaskett v. Wormuth*, 18 F.4th 1072, 1086–87 (9th Cir. 2021). However, a court may only waive sovereign immunity "to remedy a violation of recognized statutory, procedural, or constitutional rights[.]" *United States v. Woodley*, 9 F.3d 774, 782 (9th Cir. 1993). Rule 37(b) authorizes courts to award monetary sanctions against government defendants for failure to comply with a discovery order. Fed. R. Civ. P. 37(b); *Plaskett*, 18 F.4th at 1086; *Woodley*, 9 F.3d at 781 ("We have affirmed money penalties against the government under Federal Rule[] of Civil Procedure . . . 37(b) . . . Civil Rules 11 and 37(b) expressly provide for monetary sanctions."). Although federal courts have on occasion held that Rule 37 applies to a court's order to complete the administrative record, *see Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 25–26 (1st Cir. 2006); *New York v. United States Dep't of Com.*, 461 F. Supp. 3d 80, 94–95 (S.D.N.Y. 2020); *Goose Creek Physical Med., LLC v. Becerra*, No. 2:22-cv-03932-DCN, 2024 WL 3653639, at *8–9 (D. S.C. Aug. 5, 2024), the Ninth Circuit has not addressed this issue. Moreover, when Plaintiffs filed their motion to compel (the order on which they now seek to enforce), Judge Seeborg referred that motion to the undersigned magistrate judge, explicitly noting that he did not view this matter as a discovery dispute. *See* Order of Referral, ECF No. 39 ("Plaintiffs are correct that their motion is not a discovery matter, per se, and it was appropriate for them to file it before the undersigned. Nevertheless, it is the practice of the court to refer disputes over the contents of the administrative record to a magistrate judge for resolution."). Accordingly, the Court does not think that sanctions under Rule 37 are available here. Nor do Plaintiffs invoke any other statutory, constitutional or procedural right to monetary sanctions.

Accordingly, Plaintiffs' request for monetary sanctions is **DENIED**.

### 2.    Adverse Inferences

As an alternative to monetary sanctions, Plaintiffs seek adverse inferences that the documents Defendants failed to produce show that:

> (1) Defendants established a new "illegality" rule in 2017 requiring immigrant visa petitions to be evaluated for potentially violating federal law, which expanded in 2019 to include potential violations of the Controlled Substances Act, (2) Defendants departed from their precedent before 2017, which did not consider potential illegality or

1    address connection to state legal cannabis, when adjudicating
     Plaintiffs' amended petition in 2022, and (3) Defendants treated
2    Plaintiffs differently from similarly situated petitioners.

3    Reply at 11 n.7.  Plaintiffs voiced this request for the first time in their reply and did not seek

4    adverse inferences in their Motion.  Accordingly, the Court **DENIES** Plaintiffs' request for

5    adverse inferences for lack of appropriate notice in their motion.

6    **E.    Civil Contempt**

7        Plaintiffs ask the Court to find Defendants in contempt for their refusal to comply with the

8    Court's order.  Motion at 8, 10, 18.  "A court may wield its civil contempt powers for two separate

9    and independent purposes:  (1) to coerce the defendant into compliance with the court's order; and

10   (2) to compensate the complainant for losses sustained."  *Shell Offshore Inc. v. Greenpeace*, 815

11   F.3d 623, 629 (9th Cir. 2016) (cleaned up).  "Because civil compensatory sanctions are remedial,

12   they typically take the form of unconditional monetary sanctions," *id*.  By contrast, "the ability to

13   purge is perhaps the most definitive characteristic of coercive civil contempt."  *Id*.

14        To establish civil contempt, the moving party must show by clear and convincing

15   evidence that the alleged contemnors violated a specific order of the court.  *See FTC v. Affordable*

16   *Media*, 179 F.3d 1228, 1239 (9th Cir. 1999).  "The burden then shifts to the contemnors to

17   demonstrate why they were unable to comply."  *Id.* (quoting *Stone v. City and County of San*

18   *Francisco,* 968 F.2d 850, 856 n. 9 (9th Cir. 1992)).  In the Ninth Circuit, the central question

19   regarding contempt is whether the alleged contemnor performed "all reasonable steps within [its]

20   power to ensure compliance" with the court's orders.  *Stone*, 968 F.2d at 856; *Martinez v. City of*

21   *Pittsburg*, 2012 WL 699462, at *3 (N.D. Cal. Mar. 1, 2012) (the alleged contemnor must show it

22   "took every reasonable step to comply with the subpoena and . . . articulate reasons why

23   compliance was not possible.") (citing *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983)).

24   "A civil contempt order must be accompanied by a 'purge' condition, meaning, it must give the

25   contemnor an opportunity to comply with the order before payment of the fine or other sanction

26   becomes due."  *Id*.  A showing of willfulness is not necessary to establish civil contempt, *see Reno*

27   *Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006).  However, if an alleged

28   contemnor's actions were taken in good faith and based on a reasonable interpretation of the

United States District Court
Northern District of California

23

court's order, they should not be held in contempt.  *See id.*

### 1.    Magistrate Judge Authority

Absent consent by the parties, the authority of magistrate judges over civil contempt proceedings is limited.  *See* 28 U.S.C. § 636(e); *Bingman v. Ward*, 100 F.3d 653, 656–57 (9th Cir. 1996).  A magistrate judge may investigate whether further contempt proceedings are warranted and, if the magistrate judge so finds, certify such facts to a district judge. 28 U.S.C. § 636(e)(6); *see also Alcalde v. NAC Real Estate Invs. & Assignments, Inc.*, 580 F. Supp. 2d 969, 971 (C.D. Cal. 2008).  Specifically, upon finding an act constituting a civil contempt:

> the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

28 U.S.C. § 636(e)(6)(B)(iii).  Under this process, the magistrate judge functions to certify the facts and not to issue an order of contempt.  *Bingman*, 100 F.3d at 656–57.

### 2.    Certification of Facts and Order to Show Cause

The undersigned finds Defendants did not take all reasonable steps within their power to comply with the Court's June 2023 Order.  Nor do Defendants' actions appear to have been taken in good faith or based on a reasonable interpretation of the Court's order.

Defendants – who know Plaintiffs' current H-1B visa expires in January 2025 – were initially obligated to complete the Administrative Record in early 2023.  *See* Civil Local Rule 16-5 (requiring a defendant "[i]n [an] action[] for District Court review on an administrative record . . . [to] serve and file an answer, together with a certified copy of the transcript of the administrative record, within 90 days of receipt of service of the summons and complaint."); ECF Nos. 12–15 (affidavits of service on Defendants dated November 18, 2022).  The Court granted Plaintiffs' motion to compel supplementation of the certified administrative record on June 27, 2023, and the district judge denied Defendants' motion for relief from that order on July 28, 2023.  Defendants then took eight months to produce an initial privilege log that suffered from numerous

24

deficiencies, including dozens of deliberative process privilege claims for documents that Defendants did not indicate reflected any agency deliberation, and claimed deliberative process privilege to withhold multiple *post-decisional* documents generated *after* Defendants had informed Plaintiffs their H-1B petition had been denied.  *See generally* February 2024 Privilege Log.  In apparent admission of the frivolousness of many of these claims, Defendants then waived the privilege entirely in May 2024, after Plaintiffs were forced to brief the issue.  *See* Mot. at 14–16; Reply at 7–8.

Beyond the inadequacies of their February 2024 privilege log, Defendants' piecemeal efforts to comply with the Court's June 2023 Order undercut their contention that their actions were taken in good faith and were based on a reasonable interpretation of the Court's order. Defendants summarily decided to exclude certain petitioners in the cannabis industry from their search despite concrete evidence that Defendants had evaluated those very petitioners for potential illegality under the CSA (*see* Ex. D to March 2024 Goldmark Decl.) and omitted from their production entire categories of documents – such as responses to Requests for Evidence – that USCIS considered in deciding whether to approve or deny H-1B petitions filed by similarly-situated petitioners.  Meanwhile, Defendants' purportedly "fulsome" search for documents, *see* Third Burford Decl. ¶ 10, resulted in such obvious deficiencies that the USCIS employee conducting the search had to "look[] through [her] own archives" in an attempt to provide a more thorough search.  First Burford Decl. ¶ 8.

Defendants' belated production of some of the documents Plaintiffs requested does not rectify Defendants' failure to comply with the Court's Order.  *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("Last-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts."); *cf. N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986) ("Belated compliance with discovery orders does not preclude the imposition of sanctions").  In May 2024, nearly ten months after the District Court denied Defendants' motion for relief from the Court's order and only after Plaintiffs' motion to enforce had been fully briefed, Defendants produced additional documents and filed an updated certified administrative record.  Then, in

August 2024, just three months before the case is scheduled for trial and five months before Mr. Pethe's visa expires, Defendants have filed yet another notice informing the Court that they have found more responsive documents related to a different set of petitions.  Meanwhile, the searches Defendants conducted to produce those records continue to suffer from major deficiencies.

Accordingly, as it appears to the undersigned magistrate judge that Defendants' conduct "constitutes a civil contempt," pursuant to 28 U.S.C. § 636(e)(6)(B)(iii), the Court certifies the foregoing facts[2] to Judge Seeborg and **ORDERS** Defendants to appear before Judge Seeborg on November 13, 2024 at 1:30 p.m. to **SHOW CAUSE** why they should not be adjudged in contempt.[3]

## V.    CONCLUSION

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion as described above.  Defendants shall supplement the Administrative Record no later than 21 days from the date of this order.

**IT IS SO ORDERED.**

Dated: September 26, 2024

THOMAS S. HIXSON
United States Magistrate Judge

[2] The certified facts include all of the factual findings in the entirety of this order.
[3] In light of the government's sovereign immunity (discussed above), the undersigned recommends coercive civil contempt, rather than compensatory civil contempt.  Because coercive civil contempt requires a purge condition, the undersigned recommends that if Defendants comply with parts IV.A, IV.B, IV.C and V of this order, they may purge themselves of contempt.

26