UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREEZ, INC., et al.,<br>                Plaintiffs,<br>    v.<br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.,<br>                Defendants. | Case No. 22-cv-07027-RS<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION** |

This is an action under the Administrative Procedures Act brought against the Department of Homeland Security ("DHS") and its agency, the United States Citizenship and Immigration Service ("USCIS"). Also named as defendants are two USCIS directors, in their official capacities. Plaintiffs are Treez, Inc., and its employee, Ameya Vinayak Pethe, an Indian national. Plaintiffs contend defendants wrongfully denied an amended H-1B visa petition to permit Pethe to work in the U.S.

The parties have brought cross-motions for summary judgment.[1] Because this is an APA case, it is not an inquiry under Rule 56 of the Federal Rules of Civil Procedure as to whether there are disputed factual issues for trial. Rather, this is a review on the merits under the APA of the denial of the amended H-1B visa application. *See, Klamath Siskiyou Wildlands Ctr.*, 962 F.Supp.2d 1230, 1233; *see also Sierra Club v. Mainella*, 459 F.Supp.2d 76, 89 (D.D.C. 2006)

---

[1] Additional pending motions related to the proceedings before the magistrate judge will be addressed in a separate order.

("[T]he standard set forth in Rule 56(c) does not apply [in an APA case] because of the limited role of a court in reviewing the administrative record."); *McCrary v. Gutierrez*, 495 F.Supp.2d 1038, 1041 (N.D. Cal. 2007) (judicial review of agency action under the APA limited to the administrative record).

"Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Sierra Club*, 459 F.Supp.2d at 90 (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985)). In other words, "the district court acts like an appellate court, and the 'entire case' is 'a question of law.'" *Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affairs*, 842 F.Supp.2d 127, 130 (D.D.C. 2012) (quoting *Amer. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Stuttering Found. of Am. v. Springer*, 498 F.Supp.2d 203, 207 (D.D.C. 2007).

The parties are familiar with the factual and procedural background, which will not be recounted here. Plaintiffs challenge the denial of the amended petition on three grounds. First, plaintiffs contend defendants lack statutory authority to evaluate the legality of an applicant's employment. Second, plaintiffs argue defendants have effectively adopted a new regulation (which plaintiffs call the "Illegality Rule"), without following the "notice and comment" procedures agencies are required to satisfy when promulgating new regulations. Finally, plaintiffs contend the denial of the amended petition was arbitrary and capricious.

<u>Defendants' authority</u>

The APA allows courts to "hold unlawful and set aside" any agency action that exceeds the statutory authority under which it was promulgated. 5 U.S.C. § 706(2)(C). In determining whether the challenged agency action is consistent with the statutory framework, courts no longer apply

*Chevron* deference.[2] Instead, courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).

Here, plaintiffs insist nothing in the Immigration and Naturalization Act ("INA") requires or permits defendants to evaluate whether the business of the employer and/or the job of the employee involves illegality. The record reveals that defendants were attempting to apply a "Policy Memorandum" that designated a certain ruling by the USCIS's Administrative Appeals Office ("AAO") to be an "Adopted Decision." As a result, the underlying AAO ruling in that specific case became "policy guidance that applies to and binds all USCIS employees," and USCIS personnel were "directed to follow the reasoning in this decision in similar cases." *See Matter of I-Corp*., Adopted Decision 2017-02, 2017 WL 1397675, at *1 (AAO Apr. 12, 2017).

In *I-Corp* the petitioner was seeking an L-1B visa to permit it to transfer one of its foreign employees with "specialized knowledge" to work temporarily in the United States. The application had been denied for failure to establish "specialized knowledge" was required for the position. On appeal, the AAO *sua sponte* identified a different issue—namely that the salary the company intended to pay the transferred employee was below the minimum wage required by the Fair Labor Standards Act.

The AAO asserted: "To determine eligibility for many immigration benefits, USCIS officers must also take into account other, intersecting areas of law, such as criminal, family, and (as relevant here) labor." 2017 WL 1397675, at *2. The AAO concluded, "We are unable to approve an employment-based visa petition where the record indicates that a petitioner will not pay its beneficiary the minimum wage required by applicable labor law." *Id.*

Plaintiffs argue *I-Corp* was wrongly decided, but that even if it is appropriate for CIS to determine whether an applicant's proposed employment complies with labor law, the INA does not task defendants with evaluating whether other laws are implicated by the employment.

---

[2] *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc*., 467 U.S. 837, 104 S. Ct. 2778 (1984).

Plaintiffs insist recognizing any implied authority of the UCIS to consider the legality of the proposed employment would be an unprecedented and dangerous expansion of agency power. Plaintiffs' parade of horribles is not persuasive. First, it is hardly unreasonable for an agency to consider all the legal implications of any action it is considering taking. The general laws do not cease to apply merely because an agency is operating under certain express statutory authority. It would be a strange result if an agency were obligated to facilitate illegal conduct merely because an authorizing statute did not expressly direct otherwise.

Second, the scenario plaintiffs paints of an agency seizing power to evaluate proactively the possible applicability of any and all federal or state laws, and then making substantive determinations as to whether there are violations of those law, is overblown. The legality issue here arose on the face of the application, as a result of the nature of Treez' business, and in the unusual context that has resulted from the evolving difference between state and federal law with respect to cannabis. While other factual scenarios might require different analyses and results, plaintiffs have not shown that defendants' denial of the amended application in dispute here must be set aside as an act in excess of their authority.

Notice and comment

Plaintiffs contend defendants separately violated the APA by establishing and applying a new substantive rule without providing notice and opportunity for comment. While plaintiffs acknowledge that *I-Corp* itself was an adjudicatory decision in a specific case, not subject to notice and comment procedures, they insist defendants effectively promulgated a new rule when they adopted that decision through the policy memorandum and/or when they later expanded its application from the wage law violation context to the context here, where the stated concern was that the employment might implicate the Controlled Substances Act ("CSA").

Given that defendants had approved similar applications in the past, including Pethe's original application, applications for other Treez employees, and applications for others in businesses connected to state-legal marijuana operations, plaintiffs' characterization of the change

in result as being a "new rule" is not frivolous. Nevertheless, the better characterization of the record is that defendants merely began applying their existing authority to consider the legality of the employment in contexts where they had failed to apply it in the past. While this order concludes defendants' ultimate decision on the merits of the amended application was otherwise arbitrary and capricious, the determination to evaluate legal issues implicated by the proposed employment in H1-B applications was not subject to notice and comment requirements.

### Arbitrary and capricious

Finally, plaintiffs contend defendants acted arbitrarily and capriciously when denying the amended petition by: (1) departing from past precedent and treating Treez disparately without any explanation, (2) applying a new, erroneous legal standard for "aiding and abetting," and (3) failing to give sufficient weight to plaintiffs' factual evidence offered to show they do not "aid and abet" violations of the CSA.

Plaintiffs' contention that defendants failed to provide a sufficient explanation why they did not follow "past precedent" is not persuasive. Defendants may not have been quite as explicit as they could have been in admitting they now believe the prior decisions were simply wrong, but they acknowledge that the denial of the amended petition was based on a newly developed realization that, in their view, the nature of Treez' business and Pethe's work would "aid and abet" violations of federal law.

All that said, however, defendants ultimately have failed to support adequately their conclusion that Pethe's performance of his job duties at Treez rises to the level of aiding and abetting any specific violation of the CSA. "[A] person is liable under [18 U.S.C. § 2(a)] for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond v. United States*, 572 U.S. 65, 71 (2014). Liability for aiding and abetting requires "sufficient knowledge and participation to indicate that [the alleged aider and abettor] knowingly and willingly participated in the offense in a manner that indicated he intended to make it succeed." *United States v. Teffera*,

985 F.2d 1082, 1086 (D.C. Cir. 1993) (quoting *United States v. Raper*, 676 F.2d 841, 849 (D.C. Cir. 1982)). General knowledge or services that support an illicit actor are insufficient, as "aiding and abetting is inherently a rule of secondary liability for specific wrongful acts." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 494 (2023).

While it may be true that Treez specifically targets marijuana dispensaries as its customers, Pethe's job responsibilities as a software engineer are too attenuated from any conduct by third parties that violates the CSA to warrant a conclusion that his employment comprises criminal aiding and abetting such that the amended petition could properly be denied. Accordingly, plaintiffs' motion for summary judgment in their favor must be granted, and defendants' cross-motion must be denied. A separate judgment will issue in due course.

**IT IS SO ORDERED**.

Dated:  December 3, 2024

_____
RICHARD SEEBORG
Chief United States District Judge